JOHN W. NOBLE AND OTHERS v. GEORGE BAKER AND OTHERS,
COMMISSIONERS OF NOBLE COUNTY.

The 6th section of the act " to provide for the permanent location of the seat
of justice of Noble county by the legal voters thereof, and for the erection
of public buildings therein," provides only for the natural and necessary
exigencies arising from fixing the county seat either at Olive or at Sarahs-
ville ; and which exigencies must have been in the contemplation of the
voters, whether provided for by the act or not.  Said act is not in conflict
with the provisions of the State Constitution.

PETITION in error.    Reserved in the District Court of Noble
county.

The material facts in this case are as follows :

On the 29th of April, 1854, the general assembly of this
State passed " an act to provide for the permanent location of
the seat of justice of Noble county, by the legal voters thereof,
and for the erection of public buildings therein."    52 Ohio
Laws 177.

The first section of said act provides that from and after the
taking effect of the act, " so far as the location of the county seat
of Noble county is affected, as hereinafter provided, the seat of
justice in the county of Noble shall be permanently located and
fixed, until otherwise provided by law," at a place particularly
described in the northeast quarter of section three, in Olive
township, in said county.

The second section provides " that this act shall take effect,
and be in force, when and so soon as the same shall be adopted
by a majority of all the qualified electors of said Noble county,
voting at the next general election after the passage of this act,
in accordance with the rules and in the manner hereinafter pro-
vided."

The third section provides for the manner of voting, and that
" if a majority of all the qualified electors of said Noble county,
voting at said general election, shall vote for location of county
seat on said northeast quarter of section three, Olive township,

this act shall thereupon be considered and holden to be adopted by such majority."

The fourth section of the act provides for counting the votes in the several townships, and for transmitting certified returns of poll books to the clerk of the court of common pleas of said county, who, in the presence of the probate judge or sheriff of the county, is directed to count up the whole number of votes in favor of "locating the county seat on said northeast quarter of section three in Olive township," and the whole number in favor of the county seat remaining at Sarahsville, and for certifying and publishing the result, etc.

The fifth section provides for recording the certificate and notice of the result of the election, in case a majority of all the legal voters voting at said election shall vote in favor of locating the county seat on the specified quarter in Olive township ; and that such record shall be legal evidence for all purposes of the result of said voting.

The sixth section of the act reads as follows : " That the commissioners of Noble county shall, within twenty days after the result of said election shall be made known, as provided for in' section four of this act, levy a tax sufficient, together with the proceeds of the sale of the public buildings in Sarahsville, which buildings such commissioners are hereby authorized and directed to sell, to erect a court house, jail, offices and other necessary public buildings for said county on the premises described in section one of this act ; *provided,* that if a majority of all the legal voters of said county, voting at said election, shall not vote in favor of locating county seat on the premises mentioned in the first section of this act, then said public buildings shall be erected by the tax above provided for, in the town of Sarahsville, in said county."

The seventh section provides for notifying the electors to vote on the question submitted to them by the act, etc.

The eighth section declares " that when suitable buildings are provided, the commissioners of said county shall notify the officers of said county, who shall within twenty days after receiving said notice, remove their respective offices to the buildings so

provided by said commissioners, as described in this bill, and the next session of the court of common pleas and district court shall be held in said court house so erected, and the place where said public buildings shall be erected in pursuance with the provisions of this act, shall thenceforth be the seat of justice of Noble county, until otherwise provided by law."

The ninth section provides that " any elector of Noble county shall have the right to contest the validity of the vote authorized to be taken by this act, by serving a notice on the commissioners of said county," etc.; and that the court of common pleas " shall hear and determine the contest, and make an order and decree, determining the seat of justice of said county, according to the true result of said vote."

A vote was taken in pursuance of said act, and resulted in favor of locating the county seat at the place designated in Olive township.

Thereupon John W. Noble and others instituted proceedings to contest the validity of the vote.

The contestors moved the court of common pleas to adjudge that " there was no law of the State, at the time of said vote, authorizing and prescribing the manner of holding such an election, and that the law authorizing said election and removal is unconstitutional and void." And the court having heard the cause upon the evidence, overruled this motion, and ordered and decreed that the seat of justice of said county, according to the true result of said vote, " shall be and is permanently located and fixed " at the place particularly described in the first section of said act of April 29th, 1854, in Olive township. To this decision and judgment, the contestors excepted, and to reverse the same, filed in the district court of the county a petition in error, which was reserved for decision here.

The contestors claim in substance that the court of common pleas erred :

1. In holding said act constitutional, and in overruling their said motion.

2. In deciding that by said vote the seat of justice was removed from Sarahsville to Olive.

3. In deciding that the seat of justice be and is permanently fixed at Olive, before the erection of the public buildings there, which were provided for in the act.

*Stillwell, Ferguson & Casey,* for the contestors.

*Hanna, Dudley & Belford,* for defendants.

SCOTT, J.   The assignments of error in this case present several questions similar to those which arose and were determined by this court at the present term, in the case of *Huston et al.* v. *Commissioners of Perry County.*

The general question arising in the case, is as to the constitutionality of the act " To provide for the permanent location of the seat of justice of Noble county by the legal voters thereof, and for the erection of public buildings therein."

In the case above referred to, it became necessary to give a construction to a statute quite similar in many of its provisions to the act above named.

For reasons stated in the opinion in that case, and which it is unnecessary here to repeat, we hold the true meaning of the second section of this act to be, that the act shall not take effect and be in force to accomplish its main purpose, as expressed in the first section, to wit, the permanent location of the seat of justice at Olive, until it shall be adopted by a majority of the qualified electors of Noble county, etc.; and that the subsequent sections of the act which authorize an election and prescribe the manner in which it shall be conducted and held, returns made, result recorded, etc., took effect in virtue of the enactment, and from the passage of the act.

This construction, which we regard as the only sensible one, obviates the objection that there was no law authorizing the election ; and also the objection founded on the supposed conflict of the law with the first and twenty-sixth sections of the second article of the constitution.   The thirtieth section of the same article requires that " all laws removing county seats shall, before taking effect, be submitted to the electors of the county

affected thereby," etc. And in the case before us, we think it was not the intention of the legislature to submit to the electors anything else than the mere question of the location of the county seat at Olive, or its retention at Sarahsville.

But it seems to be supposed that the sixth section of this act contains provisions which, under the decision in the Perry county case, render the whole act unconstitutional.

The act which was held unconstitutional in that case, imposed upon the county a forfeiture of contract rights, as a penalty for a majority vote against removal. This the legislature could not constitutionally do, either by the act for the removal of the county seat, or by independent legislation. But in the sixth section of the act here drawn in question, we discover nothing of that kind. It contains merely provisions for the natural and necessary exigencies arising from fixing the county seat either at Olive or Sarahsville; and these exigencies must have been in the contemplation of the voters, whether provided for in the act or not. The same provision is made for the erection of the necessary public buildings, whether the one or the other site may be selected by the majority of the electors. It surely would have been competent to provide by subsequent legislation for the erection of such buildings; and we do not see that the provision becomes unconstitutional when made by the same act which authorized the election.

*Order of the common pleas affirmed.*