Scott, J.
In so far as the plaintiff, by his petition, grounds his right to an injunction upon alleged frauds in the preparation of tickets, the counting of ballots which ought not to have been counted, or the reception of illegal votes by the judges of the election, or any other frauds or illegalities occurring in the ascertainment of the popular will on the question of the removal of the-county-seat, we think the demurrer to the petition is well taken. For all such alleged grievances the statute provides a specific and adequate remedy, by contest, in the act of April 18, 1857 (S. & C. 1389). The contest there provided for, is a proceeding in rem, which may be instituted *by any elector of the county, and in which any citizen of the county may appear as contestee (sections 1 and 8).
The present proceeding is against the clerk of the court of common pleas alone, whose interest may be identical with that of the plaintiff, or who may have no interest whatever in the question, and who ought not to be subjected to the trouble and expense of contesting the allegations of the petition. The real parties in interest are ignored by the petition, and have no opportunity of vindicating their rights.
It is evident that this mode of inquiring into alleged frauds in elections, and of ascertaining the will of the majority of the electors, as expressed by the legal ballots, would be very illy adapted to accomplish the end proposed, and would be as likely to facilitate the perpetration, as the correction, of frauds against the public. But the remedy by contest under the statute is speedy, appropriate, and adequate; it affords an opportunity of being fully heard, to every one interested; and the decision of such contest, is by a judgment which binds all the world. This specific remedy having been given by statute, and being the sole remedy adapted to the ends of speedy justice, there is no reason why a court of equity should intervene, by injunction, until the facts alleged in the petition have been found, upon such contest.
*264 It was held by this court in Ingerson v. Berry (14 Ohio St. 315), that a contest is the specific and sole remedy provided by statute for the correction of all frauds, errors, and mistakes which may occur in the process of ascertaining and declaring the public will, as expressed through the ballot-boxes.
That remedy has, we understand, been resorted to in this case, and such contest is now pending; and to the adjudication of the proper court, upon the hearing of that case, the question of frauds practiced in the conduct of the election must, and we doubt not. may safely, be left.
As a further ground on which an injunction is prayed for, it is alleged that the act under which the vote for the removal of the county-seat of Wood county was held, authorized its removal to the town of Bowling Green, when, in fact, the only place in the county known as Bowling Green is not a town, *but an incorporated village only. This objection is not substantial. It is true, that the “towns and cities” act of 1852, converted all our towns into “ cities ” or “ incorporated villages,” but the word town has, nevertheless, not passed out of use, nor changed its popular sense ; and in this popular sense we must understand it to have been used by the legislature.
Having thus disposed of the minor grounds on which the plaintiff .asks an injunction, we come to the consideration of the constitutionality of the act of March 29, 1866, “to provide for the removal of the seat of justice of Wood county” (63 Ohio L. 58). This is the only law purporting to authorize such removal, and if it be unconstitutional and void, .public officers may be restrained from all action under it, looking to such removal. It is upon this alleged unconstitutionality that counsel for plaintiff mainly rely in argument.
The first two sections of that act read as follows:
“ Section 1. Be it enacted, etc., that from and after the taking effect of this section of this act, as hereinafter provided, the seat of justice, in the county of Wood, shall be removed from the town of Perrysburg, and shall be permanently fixed, until otherwise provided by law, at the town of Bowling Green, in said county.
“ Section 2. That the foregoing section of this act shall take effect and be in force, when and so soon as the same shall be-n.dopted by a majority of all the electors of said Wood county, voting *265 at the next general election after the passage thereof, as hereinafter provided.”
The 3d section prescribes that the electors shall indorse on their tickets the words “ for removal,” or “ against removal,” and if a majority are found to have voted for removal, the first section of the act shall be considered to have been adopted, etc.
The 4th section prescribes the duties of the judges and clerks of election.
The 5th section is as follows: “That in case a majority of electors in said county of Wood shall vote ‘for removal,’ as herein-before provided, the public business of the county shall continue to be transacted in the buildings now occupied for *holding eourts, and for other county purposes, until such time as new buildings shall be erected at the proposed new seat of justice, as provided by law.”
The 6th section makes it the duty of the sheriff to give notice of the election by proclamation, etc.
The 7th and last section provides, that the several sections of the act, subsequent to the first, shall be in force and take effect on the passage of the bill.
The 30th section of the 2d article of the constitution of this state, provides, among other things, that “all laws removing county-seats, shall, before taking effect, be submitted to the electors of the county to be affected thereby, at the next general election after the passage thereof, and be adopted by á majority of all the electors voting at such election, in said county.” And the 26th section of the same article, declares that “ all laws of a general nature shall have a uniform operation throughout the state.”
Now, it is' objected by the plaintiff, that the act for the removal of the county-seat of Wood county is repugnant to the constitution, in this: that the 5th section forms an important part of the scheme proposed by the act, for the removal of the county-seat, and could not, therefore, constitutionally, take effect till adopted by a vote of the electors of the county; whilst the act provides for the submission of the 1st section only to such vote of the electors, and that no other part of the act was in fact ever submitted to the electors for their approval. But is this objection well taken ?
If we look to the substance, rather than to the form of this enactment, we can not fail to see that the 5th section, though in a different part of the act from the second, is intimately connected with it> *266 was intended to qualify it, and should be read as though it were added to the 2d section by way of proviso. Reading both these sections together, it is very clear that the legislature has provided that the 1st section, which enacts the removal, shall only take partial effect upon its adoption by the electors; that is to say, it shall take effect so far as to settle the question of removal, and determine the site of the permanent seat of justice, but shall not operate, or take effect, so as to remove the de facto seat of justice from its ^present location, “ until such time as new buildings shall be erected at the proposed new seat of justice, as provided by law;” when the 1st section shall take full effect and accomplish the actual removal.
It is conceded by counsel that the legislature might, at its discretion, pass an act for the removal of a county-seat, to take effect immediately upon its adoption by the electors, or to take effect when public buildings are- erected at the new seat of justice; and that either form of enactment would be valid, when submitted to and adopted by a mojority of the electors. But it is said that the first section only was submitted, by the terms of the act, to the vote of the electors, and that that section imports an immediate removal. We do not so understand it. The second and fifth sections prescribe, as we have seen, when, and upon what contingencies, the first shall take effect. And the language of the first is, that the seat of justice shall be x*emoved from Perrysburg and permanently fixed at Bowling Green, “from and-after the taking effect of this section of this act as hereinafter provided.” These words “ as hereinafter provided.,” clearly refer to the provisions of the second and fifth sections, and thus, by reference, incorporate those provisions into the first, so that its adoption necessarily implies an approval and acceptance of the terms and conditions to which it refers.
In voting to adopt the first section, the electors necessarily voted to give that section effect as px*ovided in the second and' fifth sections ; for its own tex’ms are, substantially, that it shall operate only after it shall take effect as provided in the subsequent parts of the act.
We are clearly of the opinion, therefore, that the submission of the first section of the act to a vote of the electors of Wood county, was a submission of the whole scheme of removal contemplated in the act, and was substantially a full compliance with the requirements of the constitution.
It is, therefox’e, not necessary to consider whether the fifth sec *267 tion would not be valid, as an enactment of the legislature, independent of any sanction by the electors of the county.
It is further objected to this act, that it purports to effect a removal of the county-seat at an indefinite time, upon a *contingency uncertain, and depending upon the discretion of the county commissioners. But we do not see the force of this objection. Many laws can only operate upon the happening of certain contingencies ; yet they are nevertheless valid. We think it is clearly competent for the legislature to provide that a county-seat shall not be removed till suitable buildings shall have been provided for the public offices at the new county-seat. Such a provision has been contained in many prior laws in similar cases: as in the act of 1851, to remove the county seat of Perry county from Somerset to New Lexington (5 Ohio St. 498), and in the act to remove the county seat of Noble county (5 Ohio St. 524). But in none of these cases has a provision, so reasonable in itself, and conducive to the interests and convenience of the public, been held to vitiate the law. The electors of Wood county have it in their power to secure the erection of suitable public buildings at Bowling G-reen within a reasonable time, if they so desire. The same majority which ordains a removal, can give full effect to the act, if in no other way, by the election of county commissioners who will respect the will of their constituents.
No other points have been made in argument, which require special notice.
The demurrer to the petition will be sustained, the injunction originally allowed in the case be dissolved, and the petition dismissed at plaintiff’s costs.
Day, C. J., and White, Welch, and Brinkerhoee, JJ., concurred.