Day, J.
On the 29th of March, 1866, the legislature passed an act removing the seat of justice of Wood- county from Perrysburg to Bowling Green, on the adoption of the act by a majority of the electdrs of the county voting at the next ensuing October election. The election resulted in favor of the adoption of the act for removal.
Proceedings were instituted in the court of common pleas by the present plaintiff to contest the validity of the election, as authorized by the statute in cases of this kind. S. & O. 1389. The court found and entered of record, that a majority of the electors of the county, voting at the election, did not vote for such removal, and that the law was not adopted.
Thereupon the present defendants, who appeared in the common pleas under the authority of the statute as contestees, filed their petition in error in the district court, where the action of the common pleas was reversed, and the matter was remanded to that court for further proceedings.
To revei’se the judgment of the district court, and to affirm that of the common pleas, this petition in error is prosecuted by the present plaintiff, who was the contestor in the original proceedings in the court below.
It is claimed that the judgment of the district court must be reversed for want' of jurisdiction in this class of cases. It is true that there is no provision in the act, under which the contést was instituted and conducted, for a petition in error to review the action of the common pleas authorized by it; nor is there anything in the act expressly evincing a purpose to exclude the action of that court from review on error, as other special proceedings may be reviewed under the provisions of the Code. But such a purpose is sought to be inferred from the provision of the act authorizing a judge of the subdivision, as well as the court of common pleas, to determine the contest, upon the supposition that the action of the former cannot be reviewed.
It is provided by the 512th section of the Code that “ an order affecting a stibstantial right made in a special proceeding ” may be reviewed by petition in error. If the order be made by the court of common pleas, it may be reviewed by *205 the district court, as provided in the 513th section of the Code; or if made by a judge, in the exercise of the judicial functions imposed by the act authorizing the contest, it would be reviewable by this court under the power conferred in the 514th section of the Code, though it might be held not to be reviewable in the district court.
Since, then, an order of a judge would be reviewable equally with an order of the court, the claim of the plaintiff on this point, against the jurisdiction of the district court, based on a contrary supposition, must fail. But however that may be, this case arises upon the action of the court at a regular term; and the jurisdiction of a reviewing court, in cases of contested elections, has heretofore been repeatedly upheld. Noble v. Commissioners of Noble Co., 5 Ohio St. 524; Lehman v. McBride, 15 Ohio St. 573.
But it is claimed that no “ final order ” or “judgment” of the court of common pleas, such as the Code authorizes the . district court to reviéw, is provided for or contemplated by the statute under which the contest was authorized and conducted.
It is certain that the statute, authorizing the contest of such elections, confers upon the court the power to determine a matter of great interest to the parties and the public, and it contemplates judicial action upon the questions that may ■arise in the contest; for it provides for a “ hearing before said court or judge, upon the law applicable to the case, and the evidence to be taken and filed ” as directed by the statute, and a finding whether the result of the election will be changed, “ by reason of illegal votes, or any other sufficient cause affecting its legality.” It is difficult to see any good reason why the legal questions arising in this class of cases should not be open to revision, the same as in cases of less importance; or, where nothing appears to the contrary, why undue weight should be given to objections that are merely technical, while overlooking the substance.
It is true that in the sixth section of the act, under which the court acted, the final action of the court is not called a “ judgment” or “ final order,” but is spoken of as a certificate *206 of the result of the findings of the court to be entered of record.
Whatever this final action of the court may be called, it is a final determination of the rights of the parties; and a judgment in any case is nothing more. Code, sec. 370.
But in the seventh section of the act this certificate is called “ the final order or certificate,” and the costs are to be disposed of according to the result expressed in such “ final order.”
Since, then, the final action of the court is not only called in the act itself a final order, but is, in effect, the judicial determination of the proceeding, affecting the substantial rights of the parties interested, we think this objection to the jurisdiction of the district court is not tenable.
But, granting the jurisdiction of the district court, it is claimed that there is no error, properly appearing of record, that would justify that court in reversing the common pleas.
The statute under which the contest was prosecuted provides for the appointment of a commissioner, who is to proceed and take the testimony relating to the contest, and file the same in the office of the clerk of the court of common pleas of the county. It also provides that the matter of said contest shall be heard “ upon the law appertaining to the case, and the evidence to be taken and filed as aforesaid.” It appears by the journal entry made of the hearing by the coui’t, that the case was heard upon all the evidence so filed ■by the commissioner, “ and also upon the poll-books and tally-sheets of said election, and the ballots and votes given and cast at said election by the electors of said Wood county.”
It further appears from tbe bill of exceptions taken at the time, that, on consideration of all the evidence, the court found “ that the votes cast ” in seven of the townships could not be “judicially ascertained.; ” that the number of votes cast in the other townships in favor of removal was 1444; that the number of votes cast in said other townships against re-' moval was 1599; and that the whole number of votes cast in the county was 4647. Whereupon the court found and declared that a majority of the legal votes cast at the election *207 was against the removal of the county seat, and that the result was contrary to that returned and certified. To all which findings of the court the contestees excepted.
The contestees moved for a rehearing, on the ground that the findings of the court were contrary to the law applicable to the case, and were not supported by evidence; which motion was overruled.
A bill of exceptions was taken, embracing the poll-books, tally-sheets, ballots cast at the election, and all the other evidence filed by the commissioner.
If it be conceded, as claimed on the part of the plaintiff, that the fourth section of the act of 1858 (S. & O. 1155) has no application to eases of this kind, and that, therefore, the findings of fact by the court cannot be reviewed as in civil actions, still we think exceptions may be taken, under the provisions of the Code, to the decisions of the court upon matters of law, and thereby lay the foundation to bring in review questions of law.
The sixth section of the act, prescribing the duty of the court on the hearing of the matter of contest, clearly contemplates that the result of the election as returned shall remain unchanged, unless, “ by reason of illegal votes, or other sufficient cause affecting its legality ” to be found by the court, a contrary result is produced. The court did, by its findings, change and establish a result of the election contrary to that returned and certified. This was clearly erroneous, unless the rejection of the votes of seven townships, which changed the result, was warranted by reason of their illegality or other sufficient cause affecting the legality of the election in those townships. The court had no right to reject the votes of these townships without a sufficient legal reason. The propriety of such rejection becomes, then, a question of law.
In the reason assigned by the court for not counting these votes it is not pretended that they cannot be ascertained as a matter of fact, but that they “ cannot be judicially ascertained.” Since the court could not prdperly reject these votes, without some reason affecting their legality or that of the legality of the election, the most favorable and reasonable *208 construction of the language of the court is, that the evidence of the vote of those townships is so defective that- it cannot be legally considered by the court, and, therefore, that the votes cast in these townships cannot be “judicially ascertained.”
This view is rendered clear by an inspection of the bill of exceptions, as upon a question of law arising upon the evidence, or in relation to its admissibility. The poll-books and tally-sheets of the elections in these townships, together with the ballots cast by the voters, were in evidence. The certificates attached to the poll-books and tally-sheets, but for some formal mistakes and omissions, were correct, and substantially showed the vote for and against removal. The defects in the poll-books and tally-sheets were supplied by testimony on file; and the ballots, moreover, of each township were exhibited in evidence.
It is, therefore, perfectly clear that the vote of the rejected townships could have been ascertained as a matter of fact, and that the court must have declined to do so “ judicially,” for the reason, only, that it regarded the evidence inadmissible, and therefore held, that it could not be legally, or (as expressed by the court) “judicially,” considered.
Now, it is entirely clear that the evidence was admissible, and properly might have been considered by the court; and that the votes of the electors of these townships, on the question of removal, could thereby have been most easily and satisfactorily judicially ascertained.
The court, therefore, erred in rejecting the vote of these seven townships, and in thereby changing the result of the election from that returned and certified by the proper officers as the vote of the people on the question submitted to them.
But objection is made to this construction of the language of the court, and it is claimed that it must be taken according to the legal effect of its literal reading. If this be done, the same result will follow; for, without finding any illegality in the votes or in anything affecting the legality of the election, the court found that the result of the election was *209 different from that returned and entered of record, as required by the statute which authorized the election.
The statute submitting the question of the removal of the seat of justice to the vote of the county, provided that the vote for and against removal should be returned by the judges and clerks of the elections in the several townships of the county, as required by law in other cases; and that an abstract of the vote so returned should be made and recorded in the clerk’s office, which “ shall be taken and received as legal evidence for all purposes of the result of said voting.”
The act under which the contest was had confers no authority upon the court to effect a change of this recorded result, except upon an affirmative finding “ that illegal votes were cast at said election ” upon the question submitted, “ by reason whereof, or for any other reason to be found ” by the court, the result as returned and recorded “ is contrary to what it would have been but for such illegal votes, or other reason so to be found.”
The court does not find that illegal votes were cast at the election, nor does it find any reason whatever showing that the result of the election was contrary to that returned and recorded, as required by the statute. It only finds that the vote cast in seven townships “ cannot be judicially ascertained.”
If the vote of the county could not be judicially ascertained by the court, and there was no other objection, it surely could not find that the result was contrary to that duly “ ascertained,” returned, and recorded by the proper officers. If the court could not ascertain what the vote cast in some of the townships was, and could in others, no more authority is conferred upon it to declare the result to be contrary to that returned, than if it had found that no part of the vote could be ascertained. It could not find the result of the whole vote to be contrary to that returned, upon a canvass of a part merely, unless the vote not counted was rejected for some “ sufficient cause affecting its legality,” to. be found by the court; for without a finding of some such. *210 “ cause ” or “ reason,” the act confers no authority for changing the result from that returned and recorded. If the evidence returned by the commissioner failed to show what the vote cast was, then that returned must stand as the true vote and result of the election. If it did not enable the court to find some illegality in the vote or election, to warrant a change of the result under the contest act, the result returned and recorded under the act authorizing the vote, in the language of that act, “shall be taken and received as legal evidence for all purposes of the result of said voting.”
It is claimed that the ruling of the court did not prejudice any substantial rights of the contestees, and that therefore the district court ought to have dismissed their petition in error.
The act under which the contest was prosecuted authorizes any citizen of the county to appear as contestee in the case, and both calls and treats such contestee as a party to the contest. The rights affected by the contest are certainly substantial; and grave questions, affecting the rights and ■interests, of the parties and the public, may and do arise ■in such proceedings. The persons appearing as contestees ¿are, under the law, the parties to the proceeding representing the rights in controversy; and, as such parties, may .exercise, and are entitled to, the remedies necessary to a complete and legal determination of the contest. If this '.were not so, a great wrong, as in this case, by reason of a .•misapprehension of the law, would remain without a remedy, .contrary to the policy of the law in like cases.
It is urged that the whole act providing for the removal ■ of the seat of justice, and for submitting the question to the ■vote of .the county, was unconstitutional and void. This .question was fully considered and decided in the case of Peck v. Weddell, 17 Ohio St. 271; and we see no sufficient .reason for -changing the conclusion at which we arrived in .that case, sustaining the constitutionality of the act.
Without discussing other questions of minor importance ■that have been raised in the case, suffice it to say, that we ,think the district court had jurisdiction of the case brought *211 before it, and that the judgment rendered by it ought to be affirmed.

Judgment accordingly.

Brinkerhoee, C.J., and Scott, Welch, and White, JJ., concurred.