THE STATE OF OHIO, EX REL. ARCHIBALD M. HUSTON AND OTHERS, v. THE COMMISSIONERS OF PERRY COUNTY.

Under the code, as well as under the former practice in mandamus, the writ may properly issue, and the proceedings be conducted, in the name of the State, upon the information of the party beneficially interested.

The 3d and 4th sections of the act of March 2d, 1853, " To provide for the removal of the county seat of Perry county, from the town of New Lexington to the town of Somerset," which prescribe the form of voting on the adoption of the act, the manner of making the returns, etc., took effect from the passage of the act, and by virtue of the enactment.

The proper construction of the 2d section is, that the act shall not take effect to accomplish its main purpose, to wit, the removal of the county seat, until adopted by the voters.

The fifth section of said act imposes upon the county of Perry a forfeiture of subsisting rights acquired under a legal contract, in the event of a majority vote against removal of the seat of justice, and is, therefore, unconstitutional.

As a general rule, one part of an act will not be held unconstitutional, and another part constitutional, unless the respective parts are independent of each other. But in this case, the provisions of the first and fifth sections are intimately connected, they were submitted to the electors and voted on as a *whole;* the fifth section would induce the adoption or rejection of the first. In such a case they must stand or fall together.

THIS is an application for a writ of mandamus.

The material facts upon which the application is predicated, are the following :

On the 22d day of March, 1851, the general assembly of the State of Ohio passed " an act referring to the voters of Perry county, the question of a removal of the seat of justice of said

32

county." At the date of this act, the county seat of said county was at the village of Somerset.

Those portions of said act which are material to a proper understanding of the case, are as follows :

Section 1st provides for the time and manner of voting on the question ; and for the certificate of the number of votes polled, and the publication of an abstract of the same.

" Sec. 2. If there shall be more votes given at said election for removal than are given against removal, then the seat of justice shall be established at the town of New Lexington ; Provided, that said removal shall not take place until suitable county buildings shall have been provided in the town of New Lexington.

" Sec. 3. Should a majority vote in favor of said removal as is provided in the preceding section of this act, then it shall be the duty of the said commissioners to erect in the town of New Lexington a suitable court house, jail and other public buildings for the public offices of said county ; said buildings to be completed on or before the first day of January, eighteen hundred and fifty-six ; and it shall be the duty of the commissioners aforesaid, to dispose of the county buildings in Somerset, as they may think proper, and apply the proceeds thereof in the erection of the new county buildings in the town of New Lexington."

Section 4th provides that the sheriff shall issue his proclamation, notifying the electors to vote upon the question of the removal of the county seat.

" Sec. 5. That when suitable buildings are provided, the commissioners of said county shall notify the officers, and said officers shall, within twenty days after receiving said notice, remove their respective offices to the town of New Lexington, and the next session of the court of common pleas, and supreme court for said county, shall be holden in the town of New Lexington, thenceforth to be the seat of justice for Perry county, as is provided in section two of this act.

" Sec. 6. Provided, that this act shall not take effect unless

the friends of removal, on or before the first day of July, 1851, secure to be paid to the commissioners of Perry county, a sufficient amount of money, to be paid in three equal annual installments, to erect suitable buildings in the town of New Lexington (the commissioners to determine the amount necessary). And should the money be secured, as is provided in this section, then it shall be the duty of said commissioners to notify the voters of said county by publication in each of the newspapers of the county, at least four weeks previous to the taking of said vote, that the amount necessary has been secured, then this act to be and remain in full force."

Pursuant to the sixth section of said act, and before the 1st day of July, A. D. 1851, the friends of the removal of said county seat, consisting of the relators and some fifteen others, secured to be paid to the then commissioners of said county, and to their satisfaction, the amount of money by them deemed necessary for the erection of suitable county buildings in the town of New Lexington, of which due publication was made, as provided in said sixth section.

A vote was taken in pursuance of said act, on the question of removal, and resulted by some hundreds majority in favor of removal.

The commissioners then in office, on the 2d day of March, 1852, entered into a contract with Samuel Feigley for the erection of a court house, jail, and other public buildings, for the public offices of said county, to be completed on or before the 1st of April, 1854. And, in pursuance of such contract, Feigley proceeded with the construction of said buildings, under the direction and supervision of the then commissioners of said county, until about the month of November, 1853, when said buildings were nearly completed; at which time the then acting commissioners of said county abandoned said buildings, and from that time refused, and ever since have refused to do, or permit to be done by their authority, anything towards the finishing or completing said building, thus nearly finished and mostly paid for out of funds raised by the relators and other friends of said removal, in

pursuance of the said contract with said commissioners. In consequence of said abandonment by said commissioners, said Feigley, also, then abandoned said building in its then unfinished condition, in which it has ever since remained.

On the 2d day of March, 1853, the general assembly of the State of Ohio, passed an act, entitled " an act to provide for the removal of the county seat of Perry county, Ohio, from the town of New Lexington to the town of Somerset, in said county."

And said defendants seek a justification for their abandonment of said public building at New Lexington, and for their refusal to proceed and have the same completed, in the fact of the passage of said act of March 2d, 1853, and in the proceedings and election had in pursuance thereof.

So much of said act as is material to a proper understanding of the case, is as follows:

" Sec. 1. That from and after the taking effect of this act as hereinafter provided, the seat of justice in the county of Perry, shall be removed from the town of New Lexington, and shall be permanently fixed until otherwise provided by law, at the town of Somerset, in said county.

" Sec. 2. That this act shall take effect and be in force when, and so soon as the same shall be adopted by a majority of all the electors of said Perry county, voting at the next general election after the passage thereof, as hereinafter provided.

" Sec. 3. That the electors of said Perry county, at the next general election after the passage of this act, shall indorse on their tickets either the words ' for removal,' or ' against removal ; ' and if a majority of all the electors of said Perry county, voting at said election, shall vote ' for removal,' this act shall thereupon be considered and holden to be adopted by such majority."

Section fourth provides for counting the votes and certifying the result, and the publication of a copy of the certificate, and the entry of a copy of such certificate upon the records of the court of common pleas of the county, at the term thereof next after the election, etc.

" Sec. 5. If a majority of said electors of said county, voting at said election as hereinbefore provided, shall vote against removal, then all obligations heretofore given to the commissioners of said county, in accordance with the sixth section of an act entitled ' an act referring to the voters of Perry county the question of a removal of the seat of justice of said county,' passed March 22d, 1851, to secure to be paid to the commissioners of said county a sufficient sum of money to erect suitable county buildings in the town of New Lexington, shall be, by said commissioners delivered up to be canceled, and the commissioners shall proceed at once to levy a tax sufficient to erect a court house, jail, and offices, for said county, in the town of New Lexington, which court house, jail, and offices, shall, in the aggregate, cost not less than sixteen thousand dollars."

In pursuance of said act last mentioned, a majority of the electors of Perry county, voting at the general election in October, 1853, adopted said act, in the manner specified in the same, as appears from the certificate of the result of the voting on that question, published and entered of record, as required by the act.

The relators are tax-payers of Perry county, residents of New Lexington, and owners of property in and near said town, and have, pursuant to their contract with said commissioners, advanced all the money that has as yet been paid towards the erection of said building, and are, with others, bound to said commissioners to furnish, and are ready and willing and offer to furnish, such further sums of money as may be needed to finish said building.

The relators claim that the act of March 2d, 1853, is in conflict with the constitution of Ohio, and that all proceedings under said act are null and void, and ask for a writ of mandamus, requiring the defendants to proceed under said act of March 22, 1851, and complete said building for the use of said county, and discharge the other duties imposed upon them by said last named act.

*L. Case, C. B. Goddard,* and *Stillwell & Hazlett,* for the relators.

*Hunter & Daugherty,* for defendants.

SCOTT, J.

A question has been made in this case, whether the proper parties are before the court. The respondents claim that the State of Ohio is not a proper party, and that the relators have not such an interest in the subject matter as will entitle them to the remedy which they seek. The 570th section of the code provides that the writ " may issue on the information of the party beneficially interested," and we think the facts stated in the information show such a beneficial interest in the relators as should entitle them to relief. The subject matter of complaint is the refusal by public officers to perform a duty imposed on them by law, and in a case like the present, it must be difficult to point out any mode of obtaining adequate redress, if the performance of that duty cannot be enforced by mandamus.

The question as to the prosecution of the writ in the name of the State, is purely technical ; and if this mode of prosecution be informal under the code, leave would of course be given to amend. But we incline to think this mode of proceeding in mandamus proper. The writ is, from its very nature and definition, " a command issuing in the name of the sovereign authority.". Bouvier's Dict. Blackstone says, " It is a command issuing in the king's name." In the United States it has always been issued in the name of the sovereignty by which it has been authorized. We apprehend the code does not contemplate an essential change in the character of the writ or the proceedings under it. From the nature of the remedy, this suit, then, is properly prosecuted in the name of the State.

Passing then to questions more intimately affecting the merits of this controversy,—the respondents seek to justify their refusal to prosecute and complete the erection of public buildings at New Lexington, on the ground that the county seat of Perry county has been removed from New Lexington to Somerset, by virtue

and in pursuance of the provisions of the act of March 2, 1853; and the main questions in the case relate to the constitutionality of this act, and the validity of the proceedings under it.

It is claimed by counsel for the relators that at the time of holding the election by which the defendants claim this act to have been adopted by the electors of Perry county, there was no law in force authorizing such election, or prescribing the manner in which it should be conducted. It is said that the provisions upon this subject, which are contained in the 3d and 4th sections of the act itself, could not have the force of law, until they, as well as the residue of the act, were first adopted by a majority vote at the very election which these sections assume to authorize and regulate. And it is further claimed that these sections are unconstitutional, because the subject matter of them is not such as to exempt them from the constitutional prohibition against the passage of laws " to take effect upon the approval of any other authority than the general assembly." The argument is specious, and would seem to be warranted by the literal terms of the 2d section, which provides : " That this act shall take effect and be in force when, and so soon as, the same shall be adopted by a majority of all the electors of said Perry county, voting at the next general election after the passage thereof, as hereinafter provided."

But a *reasonable* construction must, if possible, be given to statutes. It could hardly have been the intention of the legislature, that the manner of conducting the election and making the returns, etc., should be legalized or nullified by the result of the election itself. We are relieved from this absurdity, and, doubtless, carry out the legislative intent, in holding, as we do, that the provisions of the 3d and 4th sections which authorize the election and prescribe the manner of conducting it, of making the returns, and recording the result, took effect by virtue of the enactment, and from the passage of the act; no other time being designated in the act for their taking effect.

The 2d section can only be reasonably construed to mean that the act should take effect *to accomplish its main purpose*, as stated in the 1st section, to wit, the removal of the county seat

to Somerset, when adopted by the electors of Perry county. But, in the mean time, the 3d and 4th sections must take effect by virtue of the enactment; otherwise no election could be held under the act, for the purpose of deciding the question of its adoption.

Such was the construction given by the supreme court of Massachusetts to a similar statutory provision, in a case entirely analogous to the present. *Warren and others* v. *Mayor and Aldermen of Charlestown*, 2 Gray's Rep. 84.

But an objection much more difficult to obviate, is found in the alleged unconstitutionality of the provisions of the fifth section. By the express terms of this section, its operation and effect are made wholly to depend upon the adoption of the act itself by the voters of Perry county. Its language is, " If a majority of said electors of said county, voting at said election as hereinbefore provided, shall vote against removal, then all obligations heretofore given to the commissioners of said county, in accordance with the sixth section of an act entitled ' an act referring to the voters of· Perry county the question of a removal of the seat of justice of said county,' passed March 22d, 1851, to secure to be paid to the commissioners of said county a sufficient sum of money to erect suitable county buildings in the town of New Lexington, shall be by said commissioners delivered up to be canceled, and the commissioners shall proceed at once to levy a tax sufficient to erect a court house, jail, and offices for said county, in the town of New Lexington, which court house, jail, and offices, shall, in the aggregate, cost not less than sixteen thousand dollars."· If a majority vote for removal, then this section can have no operation whatever ; for the contingency upon which it is to take effect has not arisen. But if the majority vote against removal, then its provisions become operative and absolute. And what are those provisions ?

In pursuance of authority expressly given by the act referred to in this section, a contract had been entered into between the commissioners of Perry county and those friendly to the removal of the county seat to New Lexington, by which the latter stood bound to pay to the commissioners, in annual installments, such a

sum of money as would, in the judgment of the commissioners, be sufficient to erect suitable public buildings at New Lexington. When the act of 1853, now under review, was passed, the present relators, and others identified with them in interest, had paid over to the commissioners a considerable portion of this money, and stood ready and willing to pay the residue, according to the terms of their contract, and of the provisions of the act of 1851, under which it had been made. For the payment of this residue, the commissioners held the obligations of the relators and others. In this contract, the people of Perry county had a direct interest, and had a right to demand its full performance by the relators and their coöbligors.

In this posture of affairs, would it have been within the constitutional power of the legislature, without the consent of the parties, to annul this contract, and by enactment declare that the obligations thus held by the commissioners should be delivered up and canceled ? We do not see how such a law could be reconciled with the provisions of our constitutions, state and national, which were intended to secure the inviolability of contracts. But in the case before us, by the section under consideration, there is taken away from the people of Perry county all possibility of deriving any benefit from the contract which, through their commissioners, they had entered into with the relators ; for, if they vote "for removal," public buildings at New Lexington become unnecessary, and the relators are released from their obligation to furnish means for their construction.

If they vote " against removal," then, by the express terms of this section, " all obligations heretofore given," etc., " shall be by said commissioners delivered up to be canceled," and the fund thus taken from the county, in violation of a subsisting valid contract, is to be raised by immediate taxation ; so that, in any event, the obligations of the contract are wholly canceled.

But it may be said that no injury is done to the relators, by canceling their obligations to pay money ; and that the other party—the county of Perry—would, by its majority vote, either adopt the act, and thus assent to its provisions, or, by determining " against removal," with a full knowledge of the consequences of

such vote as set forth in the 5th section, would virtually assent to the cancelation of the relators' obligations.

I reply that, as has been already said, the people of the county are not permitted, by any mode of procedure, to save for themselves the benefit of their contract. But there is another answer. Under our present constitution, the question of a removal of a county seat, must be referred to the free choice of the electors who are to be affected thereby, and their voice alone can give the force of law to any enactment for such removal. This limitation of legislative power would be quite nugatory, if the voters of a county may be dragooned into a ratification of legislative acts, by the imposition of penalties and forfeitures, as a consequence of a majority vote against removal. To secure the freedom and purity of all elections, is a vital part of our State policy. But the act under consideration does not permit the electors of Perry county to vote against the removal of their county seat from the site where their previous vote had fixed it, without an abandonment of their rights under a subsisting legal contract, to demand of the relators a sum of money sufficient to erect the necessary public buildings, nor without their submission to the immediate imposition of a tax of *not less* than $16,000, to supply the place of the fund of which they are thus arbitrarily deprived.

Whatever may have been the *motive* which led to the insertion of the 5th section of this act, the forfeiture which it imposes would doubtless have the *effect* of deterring the tax payers of the county from voting against removal; and taken in connection with the taxing clause which immediately follows, would, perhaps, account for the different result of the vote of 1853 from that of 1851. But be that as it may, we hold that it was the right of the voters of Perry county to retain their county seat at New Lexington, if they chose to do so, and that it was not competent for the legislature to subject them, in the exercise of this right, to any penalties or forfeitures whatever; and that the 5th section of this act, assuming to do so, is in conflict with the spirit and the letter of the constitution, and is therefore void.

Nor can it fall alone. For, as a general rule, one part of an

act will not be held constitutional, and another part unconstitutional, unless the respective parts are independent of each other. The provisions of the fifth section are such as would naturally influence the vote upon the adoption or rejection of the first and main section, and it would be a fraud upon the electors of Perry county, to procure their adoption of the first section, by means of the threatened penalties of the fifth, and then declare the fifth section void, but allow it to accomplish its purpose, by giving vitality and effect to the *first*, which, without it, would never have been adopted. The provisions of both sections are made equally to depend upon the result of the election; they were submitted by the legislature *collectively*, to the voters, and could only be passed upon *as a whole;* and we think they must, therefore, stand or fall together. Such is the doctrine of the case already cited, in which Chief Justice Shaw, after conceding that " the same act of legislation may be unconstitutional in some of its provisions, and yet constitutional in others," adds : " But this must be taken with this limitation, that the parts so held respectively constitutional and unconstitutional, must be wholly independent of each other. But if they are so mutually connected with, and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant a belief that the legislature intended them as a whole, and if all could not be carried into effect, the legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected, must fall with them." 2 Gray's Rep. 98, 99.

We think, therefore, that the first and main section of the act of 1853, must fall with the fifth; and with it the defense of the respondents must fail.

This statute is claimed to be void upon another ground. The act of 1851, whilst it provided for the establishment of the seat of justice of Perry county at New Lexington, contained a proviso " that said removal shall not take place until suitable county buildings shall have been provided in the town of New Lexington." Under this proviso, the public offices have been and still are kept and the courts held at Somerset; and, therefore, it is

claimed that the act of 1853 is void for want of a subject matter upon which to operate—that there was not a county seat at New Lexington to be removed. Upon this question, which counsel have so fully discussed, the opinion of the court is not entirely unanimous ; and as the case does not require its decision, we intimate no opinion.

J. R. SWAN, J., having been counsel, did not sit in this case.

*Peremptory mandamus awarded.*