MOIES (LONSDALE CO. v.). See Cases Nos. 8,496 and 8,497.

## Case No. 9,696.

### MOIR v. The DUBUQUE.

[3 Chi. Leg. News, 145; 4 Am. Law T. Rep. U. S. Cts. 84.]

District Court, E. D. Michigan. Jan. 17, 1871.

CONFLICT OF LAWS — ADMIRALTY JURISDICTION—STATE STATUTE—LIEN CREATED THEREBY.

1. The remedy by proceedings in rem, given to the state courts by the watercraft law of Michigan, is an exercise of admiralty jurisdiction, and in conflict with the judiciary act of 1789 [1 Stat. 73], and therefore void.

2. These proceedings being the only ones authorized for the enforcement of the liens provided for by the act, and being illegal, the liens themselves fall with the remedy, and are also void.

3. Maritime liens cannot be created by state statute.

[Cited in The Kate Tremaine, Case No. 7,622.]

4. The power of a state to pass laws effecting vessels fully considered, and various authorities cited and reviewed.

The claim of George Moir, as set up in his petition, and proven at the hearing, is for

services in repairing the machinery of the vessel, as follows:

| | |
|---|---|
| 1868. April 1, to 10 days' repairing machinery @ $3.................. | $ 30 00 |
| 1869. March 1, to 58 days' repairing machinery ...................... | 174 00 |
| | $204 00 |

These repairs were furnished at Detroit, the home port of the vessel, and a lien on account of them is claimed, not by the maritime law, but by the laws of the state of Michigan. Laws Mich. 1864, p. 107; Laws Mich. 1865, p. 672; Laws Mich. 1867, p. 112. This claim is opposed by the Second National Bank of Detroit, intervening for its interests as mortgagee, on several grounds set forth in its exceptions and answer, the only one of which material to be stated for the purposes of this decision, is substantially that the said state laws of Michigan, purporting to create a lien in favor of such claim for repairs in the home port, are invalid.

A. Russell, for petitioner, George Moir.

H. B. Browne, for claimant, the Second National Bank.

LONGYEAR, District Judge. The following points are well established, and are not disputed in this case: That a lien upon the vessel must at some time have existed in favor of the petitioner's claim, to entitle him to participate in the proceeds of the vessel; that the repairs constituting the basis of the claim, having been furnished in the home port of the vessel, no lien exists by the maritime law, and therefore that the claim of lien is based solely on the statutes of Michigan above cited, commonly called "the Watercraft Laws." The act upon which this claim of lien is based, was passed in 1864. Laws Mich. 1864, p. 107. Section 1 repeals a previous act upon the same subject. (In previous act and amendments thereto, see 2 Comp. Laws Mich. 1313.) Section 2 as amended in 1867 (Laws 1867, p. 112), so far as it relates to this case, provides that: "Every water craft of above five tons burthen, used, or intended to be used, in navigating the waters of this state, shall be subject to a lien thereon. First. For all debts contracted by the owner or part owner, master, clerk, agent or steward of such craft, * * * on account of work done * * * by mechanics, tradesmen or others in or about the * * * repairing, fitting, furnishing or equipping such craft." The residue of the act, with a few exceptions, which will be hereafter noticed, is devoted to prescribing the procedure for enforcing the lien created by section two. The process and proceedings are in rem, against the vessel by name, and in close analogy to the process and proceedings in the federal admiralty courts. It is unnecessary to recite these portions of the act, as there is no dispute as to their character.

In 1844, the supreme court of the United States adopted a rule in admiralty (rule 12), authorizing process in rem, against "domestic ships, where, by the local law, a lien is given to material men for supplies, repairs, or other necessaries." In December term, 1858, rule 12 was amended so as to take from the admiralty courts the process in rem in such cases, for the reason expressly stated by the court in Maguire v. Card, 21 How. [62 U. S.] 251, that such right had been assumed upon the authority of a lien given by state laws, and that such assumption had its foundation in an error which originated in that court in the case of The Gen. Smith, 4 Wheat. [17 U. S.] 439. Since the alteration of rule 12, in 1858, it has been uniformly held by the supreme court of the United States, in a large number of cases, and may now be considered as settled law, that all state laws conferring admiralty jurisdiction upon the federal courts or upon state courts, or in any manner authorizing proceedings in rem against domestic vessels as in admiralty, for the enforcement of maritime liens, are in direct conflict with section 9 of the judiciary act of 1789, and therefore null and void. See Maguire v. Card, 21 How. [62 U. S.] 248, 251; The St. Lawrence, 1 Black [66 U. S.] 522; The Hine v. Trevor, 4 Wall. [71 U. S.] 555; The Belfast, 7 Wall. [74 U. S.] 624; also The Josephine, 39 N. Y. 22.

In The Hine v. Trevor, an exception was made in favor of such state laws, of cases arising on the lakes and their connecting waters; which exception was founded exclusively on the act of congress of February 26th, 1845 [5 Stat. 726], by which concurrent jurisdiction in such cases was expressly conferred upon the state courts. But in the same case it was decided that state statutes which attempt to confer upon state courts a remedy for marine torts and marine contracts, by proceedings strictly in rem in all cases not covered by the act of 1845, were void, because they were in conflict with the act of 1789. That decision, as to all cases of marine torts and marine contracts not arising on the lakes and their connecting waters has not been in any manner changed or affected, but it is the law to-day. Not so, however, as to the excepted class of cases. The Hine v. Trevor, was decided in 1866. In 1868, the supreme court, in the case of The Eagle, 8 Wall. [75 U. S.] 25, held that the act of February 26th, 1845, must be regarded as obsolete and of no effect, with the exception of the clause which gives to either party the right of trial by jury, when requested, and that the district courts must be regarded as having conferred upon them a general jurisdiction in admiralty upon the lakes and the waters connecting them, by the 9th section of the original act of 1789. This of course wipes out the exception made in The Hine v. Trevor in favor of cases of marine torts and contracts arising on the lakes and connecting waters, and makes the rule there laid down invalidating state statutes, which confer upon state courts a remedy by proceedings strictly

in rem applicable to all cases alike. Since the case of The Eagle, therefore, it must be regarded as settled law that all state statutes which attempt to confer upon state courts a remedy for marine torts and contracts by proceedings strictly in rem in all cases are void and of no effect. The learned counsel for the petitioner has called the attention of the court to an ingenious attempt which has been made to draw a distinction in favor of such state statutes between cases in which a lien existed by the maritime laws, and those in which it did not exist, and to deduce therefrom the conclusion that while state statutes cannot confer upon state courts the right to proceed in rem in the former class of cases, it may in the latter. (See 4 Am. Law Rev. 664–670. And the learned counselor argued from this, that as no lien attached by the maritime law to a contract for repairs in the home port, therefore the state statute of Michigan conferring upon the state court jurisdiction to enforce such contract by proceedings strictly in rem, is not in conflict with the act of 1789, and is therefore valid. The supreme court has not yet had occasion to speak authoritatively upon this question. All the cases which have been before that court involving the validity of these state statutes, have been cases in which a lien existed by the maritime law. I think, however, that the distinction thus attempted to be drawn is founded in a misconception of the true meaning and scope of the jurisdictional clause of the 9th section of the act of 1789. That clause is as follows: "And shall also have exclusive original cognizance of all civil cases of admiralty and maritime jurisdiction * * * saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." 1 Stat. 76.

It will be observed that the exclusiveness of the jurisdiction is made to depend upon the "cause," and not upon the question of lien in any sense whatever. Jurisdiction attaches to the cause, the contract, the claim, without any reference whatever to whether there is or is not a lien. The question of lien becomes important only when we come to consider the remedy, and the proceedings to enforce it. If there be no lien, the remedy is enforced by proceedings in personam alone. If there be a lien, then either in personam or in rem. The saving clause is of a common law remedy, where the common law is competent to give it. Now the common law is competent to give the remedy by proceedings in personam, but not in rem. But the proceedings in rem can take place only where there is a lien. Therefore if the cause of action be maritime in its character, and there be a lien upon the vessel, the remedy to enforce the lien must be sought in the admiralty alone, because the common law not being competent to give this remedy, it is not included in the reservation, and the jurisdiction of admiralty is exclusive. No matter how the lien arises, whether it at-

taches by the maritime law, or is created by statute. In either case it is a mere incident to the cause or claim, and if that be maritime in its character, then the lien is a maritime lien, and the exclusive jurisdiction of admiralty attaches.

The contract or claim in this case is for repairs, and clearly constitutes a cause of admiralty and maritime jurisdiction. Dunl. Adm. Prac. 41–43; The Josephine, 39 N. Y. 22; De Lovio v. Boit [Case No. 3,776]; The Gen. Smith, 4 Wheat. [17 U. S.] 438; Ramsay v. Allegre, 12 Wheat. [25 U. S.] 611; Andrews v. Wall, 3 How. [44 U. S.] 568, 573; The St. Lawrence, 1 Black. [66 U. S.] 529; 12th Adm. Rule as amended in 1858. This case therefore so far as the validity of the procedure part of the statute of Michigan in question is involved, is fully covered by the cases cited, and on the authority of those cases, as well as on principle, I hold that so far as that statute confers upon the state courts jurisdiction of proceedings in rem to enforce a lien for repairs as in this case, or for any contract, claim or cause of action, maritime in its character, it is in conflict with the 9th section of the judiciary act of 1789, and is void.

The question as to the validity of a state law conferring such jurisdiction upon state courts in cases other than those above specified, depends upon other and different considerations. But as that question is not involved in this case, I shall refrain from discussing it in this connection. What has been said of course has no relation to proceedings upon executions, or even attachments, authorized by state statutes against boats and vessels, in suits where there is a personal defendant or to proceedings to enforce liens created by any such statute, according to the cause of the common law; but has relation solely to suits and proceedings in which the vessel is proceeded against as the offending thing according to the course of the maritime law. I have said this much in regard to the remedy prescribed by the statute of Michigan in question, on account of the bearing that the question of its validity is deemed to have upon the main question in the case which I shall now proceed to consider. That question is as follows: Does the lien created by section 2 of the statute of Michigan of 1864 (Laws 1864, p. 107, amended in 1867,—Laws 1867, p. 112) remain, notwithstanding that the only remedy prescribed by the statute for the enforcement of the lien, has failed and cannot be resorted to? The statute of 1864 is substantially a re-enactment with some additions, of the statute repealed by section 1, with the exception that in the former statute no provision was made for a hearing and adjudication by the court of uncontested claims, but the vessel was authorized to be sold, and the proceeds distributed in a summary manner, unless released on bond being given. In a suit brought upon a bond which had been given

for the discharge of the vessel seized under that statute, the supreme court of Michigan held that the provision of the statute authorizing a sale of the vessel without trial and judgment, was in violation of that provision of the state constitution that "no person shall be deprived of life, liberty or property, without due process of law." Parsons v. Russell, 11 Mich. 113. But what is more important to the present consideration is, that the majority of the court held, virtually, in that case that because of the failure of that one important feature of the remedy provided, the whole act failed. The court did not say this in so many words, but the conclusion they arrived at cannot be explained on any other hypothesis, and Judge Manning, in his dissenting opinion, so understood it.

I might be justified in stopping here and resting my decision upon that time-honored custom of the federal courts to accept the decision of a state court of last resort, giving construction to a state law or state constitution, as final, and say, the supreme court of Michigan having decided that in a former statute in which the lien and the remedy therein provided, bore the same relations to each other as the lien and the remedy bear to each other in the present statute, the remedy having failed for unconstitutionality, the whole statute is void; therefore, the remedy in the present statute having failed for a similar reason, the present statute is also void. But I do not choose to rest my decision on so important a question, on that basis alone. Aside from the case of Parsons v. Russell, the attention of the court was called to but two cases, (and I believe there are no others reported) in which the distinct question here under consideration was in any way involved. The first of these cases was that of The St. Joseph [Case No. 12,229], in the Western district of Michigan. In that case, this question was not presented. It seems to have been taken for granted by counsel and court that the lien existed, and the only question considered and adjudicated, was that of priority as between such lien, and the previously recorded mortgage. The other case was that of In re Scott [Id. 12,-517], in bankruptcy, in the Northern district of Ohio, in which state there is a statute similar to the one here under consideration. The contest in that case was also between state lien-holders and mortgagees; and although the distinct question here under consideration was ably presented by the counsel for the mortgagees (whose printed argument is before me) the learned judge who made the decision, did not in his opinion as published, enter into a discussion of the question, or give any expression of his views upon it, any further than to hold in general terms, that the state of Ohio having by her statutes declared that the class of claims then in question should be liens, and should at once attach upon the property at the time of the

creation of the debt, that court, as a bankruptcy court, recognized those statutes, and would be governed by them so far as possible in the distribution of the proceeds of property sold, and in the hands of the assignee. Therefore, aside from the case of Parsons v. Russell, the question under consideration, viz: "Whether the lien remains the remedy prescribed by the statute creating it for its enforcement, having failed," may be considered an open question, unenlightened by any former adjudication. and unembarrassed by any conflicting judicial opinions. To that question we will now direct our attention. The lien provided for by the statute was unknown to the common law, or to equity jurisprudence. It is solely the creature of the statute. It was a new right conferred upon a creditor. Where a right originally exists at common law, and a new remedy is given by statute without any negative, the party has his election, either to sue at common law, or proceed under the statute. But where a new right is created by statute, and a specific remedy provided for its enforcement, the remedy is confined to that given by the statute. Sedg. St. Const. 93, 94, and cases there cited.

We see then that if the lien remains at all, it is by virtue of the naked declaration of the right of lien contained in section 2 of the act, without any provision whatever in the statute, or recognized process for its enforcement, unless, as was contended on the argument equity will reach out and enforce it by its process and decrees. It may be seriously questioned whether the legislative intent having been declared as to the remedy, all other remedies are not excluded, and, that remedy failing, whether any remedy whatever remains, even in equity. "Expressio unius, est exclusio alterius." The question whether or not an equitable remedy exists, comes in question here, however, only incidentally; and aside from the consideration above stated, it depends primarily, upon the same question involved in the assertion of the right to participate in surplus proceeds here under consideration, viz.- whether, that part of the statute providing a remedy for the enforcement of the lien being void, the part providing for the lien itself is valid. A statute may no doubt be good in part, and bad in part. This depends wholly upon the relations of the different parts to, their connection with, and dependency upon, each other. Judge Cooley, in his recent work on Constitutional Limitations, lays down the rule in this respect, as gathered from the numerous authorities cited by him, and I think with entire correctness. I cannot do better than to quote his language. He says: "Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless the provisions are connected in subject matter, depending on each other, operating together for the same purpose, or otherwise so

connected together in meaning, that it cannot be presumed the legislature would have passed the one without the other. * * * If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed wholly independent of that which is rejected, it must be sustained. * * * If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fall unless sufficient remains to effect the object without aid of the invalid portion. And if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect, the legislature would not pass the residue independently; then, if some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected, must fall with them." See Cooley, Const. Lim. 177–179, and the cases there cited, particularly Warren v. Mayor, etc., of Charlestown, 2 Gray, 99; State v. Com'rs of Terry Co., 5 Ohio St. 507; Slauson v. City of Racine, 13 Wis. 398.

Let us apply this rule to the statute under consideration.

First. Section 2 of the act, in which a lien is provided for, does not declare when the lien shall attach, (differing in this respect from the Ohio statute, under which the Case of Dwight Scott, cited above, was decided, that statute declaring that the lien shall attach at once on the creation of the debt,) and we are therefore left to inference, or to other provisions of the act to ascertain when the lien was intended to attach. Section 2 simply provides that certain specified "water craft" "shall be subject to a lien thereon," for certain specified debts. Section 3 provides that "any person claiming to have any such lien, may file a complaint, etc." Section 12 provides that all liens, "which shall not be filed hereunder, before sale under decree or judgment, as hereinafter provided, shall cease." And section 45 provides that such lien shall not be enforced as against bona fide purchasers without notice, after one year from the time the same accrued, unless complaint shall have been filed within that period. It seems to me that these provisions admit of but one rational construction, and that is, that by the operation of section 2, the creation of the debt conferred upon the creditor the right to obtain a lien by complying with the other provisions of the statute in relation to filing of complaint, etc. This right to obtain a lien thus accruing on the creation of the debt, was inchoate merely, and could become complete only by filing the same in the proper court, in the form of a complaint under section 3, setting up the facts upon which the party's claim to have a lien is based. If I am right in this construction, then it is clear that the right of a lien, under section 2, was made so dependent upon the void portions of the statute for its full and complete existence and exercise, that it cannot be sustained under the rule above laid down.

Second. Section 33 fixes the order and priority in which all claims, filed before sale, shall be paid; and section 34 does the same thing as to claims filed against surplus proceeds. Section 45 fixes certain limitations as to proceedings under the act, and is in the following words: "Liens may be enforced under this act at any time within six years from their origin: provided, that no lien shall be enforced against a water-craft in the hands of a bona fide purchaser without notice, unless the complaint to enforce the same shall have been filed in the proper courts, in the county where the party claiming the lien resides, within one year from the time when the same accrued." These provisions depend for their validity upon, are, in fact, a part of the proceedings prescribed for the enforcement of the lien, and of course fall with those proceedings. If these provisions had been independent, such might not have been the effect, but it will be observed that the preference prescribed is dependent upon, or at least can be applied only in case of a sale of the vessel under the act, and that the limitations prescribed are confined to proceedings to enforce liens under the act. These provisions, therefore, can have no general application, and no application whatever, other than in proceedings under the act, and those proceedings being void, these provisions can have no application whatever. Can it be presumed that the legislature would have passed section 2, providing for liens, without fixing the order of preference in which such liens should be paid as expressed in sections 33 and 34, or prescribing the limitations of proceedings to enforce the same as expressed in section 45? Clearly not. To enforce section 2 without the qualifications and restrictions of sections 33, 34, and 45, as it must be enforced if at all, in view of the fact that those sections are void and of no effect, would be to enforce that which the legislature did not enact. It is clear to my mind, therefore, that section 2, and the other sections named, are so mutually connected with and dependent on each other as to warrant the belief that the legislature intended them as a whole; and that those other provisions being void, no effect can be given to section 2.

Third. Maritime liens cannot be created by state statutes. The Belfast, 7 Wall. [74 U. S.] 644. By the maritime law, no lien exists for repairs furnished in the home port; and so as to several others of the matters provided for in the state statute here under consideration. The contract for repairs, however, as we have already seen, is a maritime contract, and, as such, the admiralty courts have, and entertain jurisdiction to enforce it, in

personam. The contract being maritime in its character, if congress were to enact that a lien should attach on account of it, can there be any doubt that the lien thus created would be a maritime lien, and as such enforceable in the admiralty, in rem, the same and in the same manner, as in case of a lien for repairs finished in a foreign port? I think clearly not. Now, when we once recognize the existence of a lien, on account of such contract, it can make no difference by what authority it was created, whether federal or state, it is a maritime lien all the same. A lien, in any case, is but an incident, and of course takes its character from the debt or contract, and the debt or contract being maritime, the lien is maritime also, by whatever authority created. In order to arrive at the effect and true intent of the statute, we must look at it as a whole, just as it came from the hands of the legislature, and, so doing, we see, in addition to the fact that the contract is maritime in its character, that the lien created is invested with all the attributes of a maritime lien. The statute treats the vessel as the offending thing, to be proceeded against and condemned by name, not to be reached through a personal defendant, and to the extent of his interest merely, as in the case of a common law remedy, but by process purely in rem, and without any reference to the extent of the interest of the owners or persons with whom the contract was made; a process known only to courts exercising admiralty and maritime jurisdiction, and applicable only to maritime liens.

If, therefore, the lien declared by section 2 is recognized as valid, it must be so recognized as a maritime lien, and, if so recognized, then jurisdiction for its enforcement in the admiralty cannot be refused, which is a recognition of the right of a state legislature to confer jurisdiction upon the federal courts, a power which no one will contend belongs to such legislature, under the present state of decision in the supreme court of the United States. The Orleans v. Phoebus, 11 Pet. [36 U. S.] 184. It is true, the supreme court did at one time authorize the enforcement of such liens in the district courts (see rule 12), but this authority was afterwards taken away (see rule 12, as amended in 1858), and it was subsequently declared by the court (see The St. Lawrence, 1 Black [66 U. S.] 530) that the state lien "was enforced, not as a right which the court was bound to carry into execution upon the application of the party, but as a discretionary power which the court might lawfully exercise for the purposes of justice, where it did not involve controversies beyond the limits of admiralty jurisdiction." Section 2 declaring a lien, and the remaining portions of the statute under consideration, have therefore such an intimate mutual relation to and connection with each other, as to stamp the lien created by section 2 as a maritime lien, a lien which a state legislature has no power to create. I do not wish to be understood as expressing an opinion that a state possesses no power or authority, as between her own citizens, and in relation to property within her jurisdiction, to declare what shall and what shall not constitute liens, and to prescribe remedies for the enforcement of them, through a personal defendant or otherwise so long as such liens and remedies do not go beyond the spirit of the reservation contained in the 9th section of the judiciary act of 1789, "saving to suitors in all cases the right of a common law remedy, where the common law is competent to give it," and do not invade the domain of admiralty jurisdiction.

Having arrived at the conclusions above stated, a consideration of the other questions raised becomes unnecessary. The petition must be dismissed.

[For a libel against the same vessel filed by the master, see Case No. 4,110.]