Okey, J.,
delivered a concurring opinion. It so clearly illustrates what is meant by “ a special act conferring corporate powers,” as applied to the present case, that, lest the strength and terseness of its language should be imperiled by an attempt to summarize or paraphrase it, the foliowing extracts are given in the language of the concurring judge:
“ I do not dissent from the view expressed in the opinion of Mcllvaine, J., but I prefer to withhold the expression of an opinion upon that question until such opinion becomes necessary.. I think the case will be properly decided when a correct answer is given to the 'question, whether the act, so far as its validity is involved in this case, is in conflict with the provision of the constitution inhibiting the granting of corporate powers by special act.
“ Not only is the fact found in the record that the words above quoted from the act apply to the city of Springfield *118 alone, but without such finding this court should take judicial notice that the words never did and never can apply to any other municipal corporation than Springfield; and, consequently, the act, to that extent, is local and special. State v. Covington, 29 Ohio St. 102; McGill v. State, 34 Ohio St. 228, 258, 270 ; State v. Brewster, 39 Ohio St. 653 ; Devine v. Com. of Cook Co., 84 Ill. 560. And as the act assumes to confer upou the city of Springfield power to hold an election of its electors for public officers for the corporation, and exercise other important functions, it is too clear for argument that that act, in form, confers corporate power. State v. Mitchell, 31 Ohio St. 529. And the act being invalid, for the reason stated, so far as it authorizes the city of Springfield to hold a corporate election, and it being neither reasonable nor probable that the legislature would have made provision with respect to Springfield, unless the whole act could have effect with respect to that city, it follows that the whole act is void, so far as Springfield is concerned. State v. Sinks, 42 Ohio St. 345. . . . Believing the position I have assumed to be impregnable, I am content to rely upon it.”
It was not made to appear in that case that any new police powers were conferred on the city of Springfield by the act in question, or that any thing more was contemplated by it than the conferring of the exercise of the police power which the city already posssessed upon new agencies and instrumentalities.
If the grant of authority to a municipal corporation to elect by a popular vote four police commissioners to control its police is to confer corporate power, how much more emphatically is it so to invest such a corporation with authority to chose a “board of control” of three members who are to be almost supreme in the government and administration of the affairs of a great city.
The analogy'is not at all disturbed by the fact that the city is by the act authorized to elect the couneilmen who are to appoint the board of control. It is still the act of the- city. The power is a radically new one, never before *119 possessed in any form by the city. This is an answer to the argument for the respondents that the act confers no new powers upon the city, but simply changes the agencies by which the powers already possessed are to be exercised.
Heretofore two members of the city council have been chosen in each ward. By this act the wards are to be differently comprised, and but one member of the council chosen in each. This power of election, so radically new, is conferred by this special act.
Among the many powers not before possessed by the city is that conferred upon it to appoint, with numerous other officers, “ a prosecuting attorney of the police court, who shall also act as assistant prosecuting attorney of the county in which 'such cities are located.” It will not be contended that the conferring of power upon a city to appoint county officers is simply the transfer of a power already possessed from one agency of the city to another.
In the light of the cases cited, and of the reason and logic of the case itself, it is submitted that this act so clearly confers corporate powers upon the city of Columbus as to leave no ground for serious controversy.
It is maintained, however, that to hold this act to be unconstitutional is to antagonize former decisions of this court.
Walker v. Cincinnati, 21 Ohio St. 14 (known as the “ Cincinnati Southern Railroad Case”); State v. Brewster, 39 Ohio St. 653 ; the unreported case of State ex rel. McCarty v. Brewster; The State v. Covington, 29 Ohio St. 102; The State v. Baughman, 38 Ohio St. 455, are relied upon as sustaining the act in question.
It must be conceded that the principle declared in Walker v. Cincinnati is an important one.
By the principle therein declared, the general assembly may authorize a city of the state to pledge its corporate property, its revenues, the property of its citizens (through its taxing power) in the sum, if necessary, of twenty millions of dollars, to construct, own, operate, or lease a railroad to the Gulf of Mexico.
*120 The proposition is one to strike thoughtful men with alarm ; as it did the court itself.
Scott, C. J., speaking for the court, declared: “This is the first instance, in the history of the state, so far as we are aware, in which the general assembly has undertaken to authorize municipalities to embark in the business of constructing railroads, on their own sole account, as local improvements. . . . But we must bear in mind that the question is one of legislative power, and not of wisdom, or even of the justice of the manner in which that power, if it exists, has been exercised. Had we jurisdiction to pass upon the latter question, we should probably have no hesitation in declaring the act under review to be an abuse of the taxing power.”
But it is profitable to inquire: What is claimed from these cases? Is it maintained that in either case this court was considering the validitity of a special act conferring corporate powers? And if it was, is it claimed that this court in either case up>held such an act ? It is but fair to this court to say that in the Walker case it was not claimed that the act in question was special or that it conferred corporate' powers.
There is not a suggestion from the opening sentence to the close of the long and very able opinion of the learned chief justice, that either question was involved in that case. What might have been the conclusion of the court in that ease if these questions had been considered, it is idle to conjecture.
It is no reflection upon the eminent judges who comprised this court at the time of that decision, however, to say that the announcement by this court that it is not eager to extend the application of the principle of the Walker case, would not be regarded as a menace to the rights or liberties of the people.
If it is claimed that State v. Brewster is authority upon the question of an act similar to the one before us, which conferred corporate, powers, it may be said that throughout the able opinion of Okey, J., in that case, there is not the *121 slightest suggestion that such a question was involved. The clause of the constitution pertaining to that question is not once quoted or alluded to.
But we disclaim all purpose of suggesting any doubt concerning the conclusions reached and questions decided in the Brewster case. The legislation involved in that case was held to be general. With that holding we are still content. .
It it not enough to afford a binding precedent for us that these questions may have been lurking in the record of a former case, and might have been raised and considered. If they were not considered, it is as if they were not in the cases at all. We are not now reviewing, or considering the soundness of, the conclusions announced in either of those cases.
But to contend that this court has ever upheld a special act conferring corporate powers, is to argue that, in a moment of thoughtlessness, or, worse yet, in a moment of supreme recklessness, and by an act of judicial usurpation, it has trampled under foot a provision of our constitution plainly ordaining: “That the general assembly shall pass no special act conferring corporate powers.” The assumption is utterly unsupported by any former adjudication of this court.
In the eases of State v. Covington and State v. Baughman, supra, the powers in question wmre conferred upon unincorporated boards, and are relied upon to support the conclusions already announced in this opinion, that so far as the act conferred powders on the trustees of the sinking fund it was not unauthorized.
These cases also lend support to the further view that, so far as the act conferred corporate powers upon the city of Columbus, it is unauthorized; as they illustrate the distinction already defined between powers conferred upon a corporation and those conferred upon an unincorporated board or body.
It sometimes occurs that an act of the general assembly *122 is enforced by this court, which, thereafter, when for the first time, its constitutionality is questioned, is overturned.
It is a familiar principle that courts are not officiously to raise constitutional questions not urged by counsel. In fact, it is the duty of courts of last resort not to decide an act unconstitutional so long as there are other grounds on which the case may be disposed of. Butzman v. Whitbeck, 42 Ohio St. 232; State v. Sinks, 42 Ohio St. 345; Cooley’s Con. Lim. 199. In the case of State v. Mitchell, supra, it was urged that an act substantially like the one in question, so far as it was special and conferred corporate powers, was before this court in Welker v. Potter, 18 Ohio St. 85, and was upheld. White, C. J., said, in the Mitchell case: “ The question under consideration was not made or considered in Welker v. Potter. . . . The fact that the act conferred corporate power, and was thus in conflict with section 1, article 13, was not suggested in argument or considered by the court. That case is, therefore, not to be considered as authority on any question involving the grant of corporate power.”
A still stronger case, illustrative of the rule that questions not considered in a former ease are not authority now, although they appeared in the record and might have been urged, is Fouts v. The State, 8 Ohio St. 98. Fonts had been tried for murder in the first degree, convicted, and sentenced to be hung.
Among the grounds urged for a reversal of the sentence, was the claim that the indictment failed to charge the offense ,of which he was found guilty. It transpired that other prisoners before him had been convicted and executed under the same form of indictment. Indeed, in a former case, Moore v. The State, 2 Ohio St. 500, a conviction under the same form of indictment was sustained and the prisoner executed.
But on investigation, the court found the indictment to be fatally bad, in that it did not charge the crime for which Fouts was convicted. What did the court do ? Bid it tell the prisoner that his conviction and sentence were illegal *123 and void, aud were under an indictment which did not charge a capital offense, but that he must be executed; that a prisoner had already been ordered to be executed under the same form of indictment, and that the court, from an altar of justice must be turned to an altar of sacrifice, in order that it should be consistent with itself? On the contrary, the court promptly set aside the sentence of death!
Bartley, C. J., speaking for the court, said : “ It has been urged that this court had decided this question otherwise, in the ease of Moore v. The State of Ohio, 2 Ohio St. 501, by approving an indictment of the same kind. In answer to this, it is sufficient to say, that this question was not raised, or brought to the attention of the court in that ease. A reported decision, although in a case in which the question might have been raised, is entitled to no consideration whatever as settling, by judicial determination, a principle not only not passed upon, but not raised or even thought of, at 'the time of the adjudication.”
If it be conceded, then, that the act involved in the Walker case, or any act supplementary to it, and authorizing the issuing of additional bonds by the city .of Cincinnati, was a special act conferring corporate powers, yet any adjudication not involving the consideration of that question is no authority now.
It is not easy to conceive of an argument supporting the act now in question, based on prior adjudications, which is not, at the same time, a labored apology for disregarding the constitutional provision which this case involves.
But let it be supposed that a special act conferring corporate powers had heretofore been upheld by this court in defiance of the constitution. Will it be claimed that the rule of stare decisis requires us to follow it ? While it is important that this.court should be consistent, it is also important that it should be right; especially upon all questions involving the constitution, which the people have, ordained for our guidance and their protection. There is no rule of stare decisis which exacts of this court a blind and sullen adherence to a palpable wrong ! For if it be true *124 that in the past — bowing to the clamors of expediency oi’ of some special exigency — we have broken through the limitations and departed from the plain provisions of the constitution, we can not return too soon.
But it is submitted, however, that no case can be found which needs to be overruled or substantially qualified in order to sustain the conclusion we here announce, which is that the act in question, so far as it confers corporate powers upon the city of Columbus, is unconstitutional and void.
IV. But one question remains. How does the conclusion just announced affect those provisions of the act, which concern the powers of the trustees of the sinking fund? It is a familiar principle that when part of a legislative enactment is found to be unconstitutional, and another part, which, standing alone, would be free from constitutional infirmity, are so connected in the general plan and object of the act that it is highly improbable that the legislature would have enacted the one without the other, the one is so affected by the infirmity of the other that both must fall. Lookiug again to the title of the act, we find that.it is not simply one to divide the city of Columbus into wards. It is an act “to reorganize and consolidate” the city. The general plan of the act is to invest the city with an entirely new system of municipal government.
Looking at the entire act, it is highly improbable that the legislature would have enacted the provisions for redistricting the city without those for its reorganization. State v. Commissioners, 5 Ohio St. 507; State v. Sinks, 42 Ohio St. 345. The conclusion is inevitable, that so much of the act as provides for redistrieting the city is also invalid.
In declaring this result we are not unmindful that it is a grave matter to overturn, by judicial construction, a deliberate enactment of the general assembly. All presumptions are .in favor of the power of that body to enact the law. All considerations involving the wisdom, the policy, or the expediency of the act are addressed exclusively to that branch of the state government. Its power to enact the *125 law is the sole question addressed to this court. So long as doubts concerning this power remain, it is our plain duty to resolve them in favor of the validity of the act.
But when the unconstitutionality of an act is very clear to this court, it is clothed with no higher function — it is invested with no more exalted duty — than to say so with promptness. To surrender our convictions to a mere sentiment, or to an apprehension that it may seem an arrogant assumption of superior wisdom to declare a legislative enactment invalid, would be a weak disregard of a plain duty, as dangerous to the state as the void enactment itself. Within the limitations of' the constitution there is safety and stability. Beyond them there is always peril and uncertainty.
Thus, at much length, do we submit the views which support our conclusions. The excuse for the length of this opinion is to be found in the belief that nothing is more potent to allay the smart and disappointment of an adverse judicial decision, than the assurance that it is the product of thoughtful deliberation and sincere conviction.

The demurrer is overruled and judgment of ouster entered.