STATE *ex rel.* ATTORNEY GENERAL vs. O'NEILL, MAYOR, etc.

*Constitutional Law: Statute to take effect on a contingency.*

1. An act of the legislature complete in itself, but which is to take effect only on the happening of a certain contingency, is not invalid for that reason.
2. Ch. 401, Pr. and L. Laws of 1869, entitled "An act establishing a board of public works in the city of Milwaukee," provides that it shall be void, unless accepted by a majority of the legal voters of that city, in a manner therein prescribed; and it was so accepted. *Held,* that it is valid.

APPLICATION for a *Mandamus*.

Section 1, ch. 401, Local Laws of 1869, entitled "An act establishing a board of public works in the city of Milwaukee," provides, *inter alia*, that "the members of the first board shall be appointed by the mayor of said city, with the approval of a majority of both boards of the common council. The members of the first board shall be appointed within three weeks after the passage and publication of this act, and shall hold their offices, respectively, one, two and three years, the term of each to be designated by the mayor, in making his appointment, and to commence on the third Tuesday of April, 1869," etc. Section 37 provides: "This act shall be void, unless the legal voters of the city of Milwaukee, at the annual charter election of said city, to be held on the 6th of April, 1869, by vote determine to accept the same. * * * If a majority of the votes cast at such election upon such question shall be in favor of a board of public works, the mayor shall make proclamation of the fact, and thereupon this act shall take effect and be in force from and after the first day of May, 1869." The act was published March 29, 1869; and, at the charter election on the 6th of April following, a majority of the votes cast upon that question were in favor of the establishment of such board of public works. The respondent, as mayor of said city, having refused to issue a proclamation stating this fact, or to appoint members of such board of public works, application was made to this court to compel him to do so. An alternative writ having been granted, the respondent moved to quash, on the ground that the act was invalid.

*D. G. Hooker* and *Jno. W. Cary*, for the motion:

By sec. 1, art. 4 of the constitution, the legislative power of this state is vested in the senate and assembly. It may be that a law which *goes into effect or operation* upon the happening of a particular event, may be valid. That event, however, cannot be the result of a vote of the

people of the state upon the question, whether the, law shall go into effect. The authorities seem to sustain the position, that a law affecting a particular city, which becomes a valid and complete law *in presenti*, may be submitted to a vote of the electors of the city, to determine whether they will accept its provisions, and the legislature may provide that the law shall not become operative until approved. The question, whether the law shall be valid as such, or whether it shall be a law, cannot be determined by the people. *Barto v. Himrod*, 4 Seld. 483; *Clark v. Rochester*, 28 N. Y. 605; *Starin v. Genoa*, 23 id. 439. 2. The act was not in force when the vote was taken. It was not to go into force, in any event, until May 1, 1869; and the vote was to be taken April 6, 1869. Cooley's Const. Lim. 156; *Supervisors of Iroquois County v. Keady*, 34 Ill. 293; 16 id. 361; *Rochester v. Alfred Bank*, 13 Wis. 439; *Clark v. Janesville*, id. 414; *Attorney General v. Foote*, 11 id. 14.

*Wm. P. Lynde*, contra, cited Cooley's Const. Lim. 118–125; *State v. Parker*, 26 Vt. 357; *State v. Reynolds*, 5 Gilm. 1; *Comm v. Painter*, 10 Pa. St. 214; *In re Richard Oliver*, 17 Wis. 681; *Peck v. Weddell*, 17 Ohio St. 287.*

COLE, J. The principal objection taken to the law mentioned in the relation and alternative writ is, that the act was not passed, and did not become a law, by the will of the legislature. It is insisted that it clearly appears, from the various provisions of the act, and more especially from the language of the thirty-seventh section, that the legislature merely proposed the law, and submitted the question to the electors of the city of Mil-

---

* The following authorities bearing upon the question are cited in a paper found upon the files in this case, without any name of counsel attached: *Alcom v. Hamer*, 38 Miss. 652; *Hobart v. Supervisors*, 17 Cal. 23; *Blanding v. Burr*, 13 id. 343; *Santo v. The State*, 2 Iowa, 165; *Geebrick v. The State*, 5 id. 491; 8 id. 82; *State v. Beneke*, 9 id. 203; 13 Grat. 78; 3 Harr. 335; 4 Zab. 385; 2 Gill, 11; 8 Pa. St. 391; 10 id. 214; 46 Me. 206; 17 Mo. 521. REP.

waukee whether it should become a law or not. The law, therefore, it is said, derives its authority as a law, not from the will of the legislature which enacted it, but solely from a vote of the electors of the city; and this, it is claimed, is an attempt on the part of the legislature to delegate the power conferred upon it by the constitution, of making laws, to the people, and is condemned by the doctrine of numerous cases to which we were referred.

The law in question is entitled "An act establishing a board of public works in the city of Milwaukee." It is unnecessary to give a synopsis of its various provisions. It is sufficient to say, that the law consists of thirty-seven sections, carrying out, in great detail, the object expressed in the title. In the first clause of the first section, it is provided that "there is hereby established for the city of Milwaukee an executive department, to be known as the board of public works, to consist of three members, who shall be styled 'Commissioners of Public Works.'" Then provision is made for the appointment of this board; the term of office is fixed; the powers and duties of the board are prescribed; and the thirty-third section declares that, "from and after the taking effect of this act, the office of street commissioner and superintendent of bridges shall cease to exist, and the powers and duties of the street commissioners of the several wards of said city shall thereupon devolve upon and be invested in said board of public works."

This is sufficient to disclose the character of this law, and to show that it relates wholly to the municipal government of Milwaukee, and whether certain powers of local regulation and interest shall be exercised by one set of agents or another. The last section reads as follows:

"SEC. 37. This act shall be void unless the legal voters of the city of Milwaukee, at the annual charter election

of said city, to be holden the sixth of April, 1869, by vote determine to accept the same, and such vote shall be had and returned and canvassed in the same manner as provided in reference to such charter election. The tickets which shall be polled upon such question shall be deposited in a separate box provided for that purpose in each election precinct, and shall contain either the words, 'In favor of a Board of Public Works,' or, 'Against a Board of Public Works.' If a majority of the votes cast at such election, upon such question, shall be in favor of a board of public works, the mayor shall make proclamation of the fact, and thereupon this act shall take effect and be in force from and after the first day of May, 1869."

The language used in this section is mainly relied upon to show that there was an unauthorized delegation of legislative power to the electors, since it is provided that the "act shall be void unless the legal voters of the city of Milwaukee, at the annual charter election," "by vote determine to accept the same." But it seems to us that the act is what is termed in the books a conditional one, and was to take effect, or go into operation, upon a contingency provided in the law itself. It is a complete enactment in itself; contains an entire and perfect declaration of the legislative will; requires nothing to perfect it as a law; while it is only left to the people to be affected by it to determine whether they will avail themselves of its provisions. The law establishes a board of public works, and confers upon the board certain powers which have hitherto been exercised by other municipal officers or agents. And it is very manifest that the precise question submitted to the electors was, whether they were "in favor of a board of public works," or "against a board of public works." If a majority of the electors were, or should be, in favor of the board created by the law, then the law was to go into full operation; otherwise not. And the question is, can such a law be said

to be an unauthorized delegation of legislative power to the people, because it appears upon the face of the act that the legislature merely proposed a project or plan for a law, and submitted the question to the electors to determine whether it should become a law or not? It appears to us not.

The question here involved is not a new one. It has frequently been presented to the courts. And while it must be admitted that in some of the cases many very nice distinctions are taken, and much subtle reasoning employed to show that certain laws were invalid because made to depend on a vote of the people, yet this proposition seems generally to be conceded, that a valid statute may be passed to take effect upon the happening of some future event, certain or uncertain. RUGGLES, C. J., makes this concession in *Barto v. Himrod*, 8 N. Y. 483–490, and there is no doubt but the principle is affirmed by many high authorities. But, while conceding this proposition, the chief justice in that case thought it was not competent for the legislature to provide that a general statute should take effect upon the happening of a future contingent event, such as a vote of the people in its favor. The courts of New York, however, have not shown any disposition to extend the doctrine of *Barto v. Himrod* to local and special statutes, which relate to local government and matters of municipal concern. *Bank of Rome v. Village of Rome*, 18 N. Y. 37; *S. C.*; 19 id. 20; *Starin v. The Town of Genoa*, 23 id. 239; *Gould v. The Town of Sterling*, id. 456; *Clarke v. City of Rochester*, 28 id. 605. And REDFIELD, C. J., in the case of the *State v. Parker* (26 Vt. 356–365), says that the distinction attempted between the contingency of a popular vote and other future uncertainties is without all just foundation in sound policy or sound reasoning, and that it has too often been made more from necessity than choice — rather to escape from an overwhelming analogy than from any obvious differ-

ence in principle in the two classes of cases. This criticism upon the soundness of the doctrine of *Barto v. Himrod*, and cases of that class, strikes my mind as having great force, though it is not necessary to fully adopt it as correct in this case, since the law before us is one of local concern, relating solely to the municipal government of the city of Milwaukee. And, in respect to legislation of this character, the decided preponderance of authority is in support of the doctrine that the legislature may refer "questions of local government, including police regulations, to the local authorities; on the supposition that they are better able to decide for themselves upon the needs, as well as the sentiments, of their constituents than the legislature possibly can be;" and, upon the same ground, may provide that an act, perfect in itself, may go into operation and effect on a contingency of a vote of the people in its favor. (See the authorities cited on the briefs of counsel in this case.) It seems to us that all the legislature has done in the thirty-seventh section above quoted was, to prescribe the condition upon which the law was to be in full force and effect, and that, when the condition was performed, or the contingency happened, the provisions of the law derive their authority, not from the vote, but from the will of the law-making power.

It was further urged that this law must be held void for the reason that it was not in force for any purpose when the election was held under it. This position is clearly untenable. The intention of the legislature that the law should take effect for the purpose of taking an expression of the will of the electors in favor of and against the board of public works is too manifest to be seriously questioned. The time for holding the election is fixed in the 37th section, and it is further provided that the "vote shall be had and returned and canvassed in the same manner as provided in reference to such charter election." This evidently implies that the law

was to be in force for the purpose of holding the election, and ascertaining the result of the vote. It is true, it is provided, in the last clause of the section, that "if a majority of the votes cast at such election upon such question shall be in favor of a board of public works, the mayor shall make proclamation of the fact, and thereupon this act shall take effect and be in force from and after the 1st day of May, 1869." This clause obviously relates to the contingency that the vote should be in favor of the board, when the law was to take effect, and be in full operation after the time therein prescribed. To sustain the other view, would compel us to resort to an unnatural construction of the language of the whole section for the purpose of defeating the law. The cases to which we were referred upon this point, we think, are not applicable.

The point made upon the language of the first section, that the members of the first board were to be appointed in three weeks after the publication of the law — the law having been published March 29 — and that the term of office was to commence on the third Tuesday of April, 1869, does not seem to require any special atten tion. The counsel for the respondent suggested a very satisfactory way of reconciling this apparent conflict between the first and last sections, growing out of the phraseology there used, and how effect can be given to both sections.

*By the Court.*— The motion to quash the alternative writ is denied.