2. From the view taken by the court, that section 5306, Rev. Stat., as amended, does not affect this case, it is still open for consideration by a reviewing court upon the weight of the evidence.

If the case, as presented in the record, rested solely upon the weight of the evidence, notwithstanding the rule that a reviewing court should not reverse simply because it differs from the jury upon the facts, yet where there is substantially no evidence to support the verdict, or the verdict is manifestly against the weight of the evidence, in such case it is the duty of the reviewing court to set aside the verdict and judgment based thereon. And this is the conclusion of the court, upon a review of the evidence, that the verdict is against the weight of the evidence.

Therefore, this cause is reversed and the judgment set aside, because: it is contrary to law, and the verdict of the jury is against the manifest weight of the evidence.

---

## CONSTITUTIONAL LAW.

[Holmes (5th) Circuit Court, November Term, 1901.]

Douglass, Voorhees and Donahue, JJ.

STATE EX REL. ALLISON V. WM. F. GARVER, PROS. ATTY., ET AL.

1. ACT 93 O. L. 660, IS LOCAL AND CONSTITUTIONAL.

The act of April 26, 1898, 93 O. L. 660, in so far as it prescribes and limits the compensation of county officers, the operation of which is expressly limited to Holmes county, relates to a subject local in its nature and therefore does not conflict with Art. 2, Sec. 26 of the constitution of this state, requiring uniform operation of general laws.

2. CONTINGENCY—SUBMISSION TO VOTE DOES NOT INVALIDATE.

The contingency named in Sec. 13 of said act, " that if upon such election a majority of the votes cast upon said proposition shall be in favor of a salary law, this act shall take effect and be in force from and after the first day of

Allison v. Garver.

January, 1899, but if a majority of said votes cast on said proposition be against a salary law then this shall be void" does not make said act invalid. This submission by the legislature to a local constituency of a question affecting their local interests does not render such act invalid, although by its terms it was to take effect only after it should be approved by a majority of the popular vote at such election.

**3**  GENERAL RULE AS TO CONTINGENT LAWS.

The power of the general assembly to pass laws cannot be delegated by them to any other body or to the people, but a valid statute can be passed to take effect upon the happening of a future event whether certain or uncertain : (a) Laws may be absolute, dependent upon no contingency, or they may be subject to such conditions as the legislature may impose. (b) No valid reason appears why a vote of the people in favor of a law should be excluded from the number of those future contingent events upon which it is provided that a law shall take effect. (c) While power to make the law cannot be delegated, yet, authority may be conferred as to its execution under and in pursuance of the law. In such event the contingency of. a popular vote becomes the law's appointed means of determining a result which the law declares and enacts shall be the contingency of its operation. Making the operation of the law depend upon a popular vote is a part of the law itself, and thus putting it into operation is the legislative will on the subject. It is the law that makes the vote, and not the vote that makes the law.

4.  PRESUMPTION IS IN FAVOR OF VALIDITY OF LAW.

The presumption is always in favor of the validity of a law ; and it is only when there is a clear usurpation of a power, or a manifest assumption of authority, or a clear incompatibility between the constitution and the law, that judicial tribunals will refuse to execute it.

Judge Wellington Stilwell, for plaintiff, cited :

Act of April 26, 1898, 93 O. L. 660, is unconstitutional. Sec. 26, Art. 2, of the constitution; Art. 2, Sec. 30, and Art. 13, Sec. 7.

It is a general principle that where a statute is passed, unless there is something in the statute providing against the taking effect, or a constitutional provision, it takes effect from the date of its passage. The authorities are found in 7 Lawson R. &. R., Sec. 3764. See also C. W. & Z. R. R. v. Clinton Co., 1 Ohio St. 77.

That the act or any act of that kind except those especially excepted by our constitution were considered as being prohibited by those who advocated as well as those who opposed the above cited provision of the constitution in the constitutional convention of 1851, is clearly established by the debates. See Vol. 2, P. 163, 4, 215 to 228, 568, 578, 579, 633, 807, 831, 833, the last page being its adoption as it now stands.

I concede that in the excepted cases of schools, changing county seats, county lines, establishing new counties, banking associations, the legislature may provide in the act for the submission of the question of the taking effect of the act on the approval by vote, and that in such case so much of the act as provides for taking the vote will be in effect so far as to authorize that vote. This in a case of changing a county seat specially authorized to be submitted to a vote is settled

in State v. Commissioners, 5 Ohio St. 497; see also Noble v. Baker, 5 Ohio St. 524; Weaver v. Cherry, 8 Ohio St. 564.

In the absence of a constitutional provision, laws submitting the taking effect to a vote of the people or to a court, or to persons, or the acts of any legislative body, municipal or otherwise, authorized to do an act delegating that power to any other person, court, board, or officer, in some of the cases even to the judges of the Supreme Court, have been held unconstitutional. People v. Board, 52 N. Y. 556, 567; Barbo v. Himrod, 4 Seld. N. Y. (8) 483; Schofield v. City, 17 Mich. 437; Bellinger v. Gray, 51 N. Y. 610; Robison v. Dodge, 18 Johns. 351; Senate v. Alpena Co., 57 N. W. Rep. 1101 [99 Mich. 117; 23 L. R. A. 144]; Wisconsin K. Institute Co. v. Milwaukee, 70 N. W. Rep. 68 [95 Wis. 153; 36 L. R. A. 65; 60 Am. St. Rep. 105]; State v. Field, 17 Mo. 529, 530 [59 Am. Dec. 275]; 65 Ga. 645; State v. Simons, 21 N. W. Rep. 750 [32 Minn. 540]; People v. Clark, 47 Cal. 456; State v. Young, 9 N. W. Rep. 737 [29 Minn. 474]; City v. Clemmens, 52 Mo. 133; 37 N. J. L. 12; Brewer v. Inhabitants, 62 Me. 62; Territory v. Stewart, 23 Pac. Rep. 405 [1 Wash. 98]; Cooley on Constitutional Limitations, 141, 146; Municipal Suffrage, In re, 36 N. E. Rep. 488 [160 Mass. 586; 23 L. R. A. 113]; State v. Armstrong, 3 Sneed (Tenn.) 634; Santo v. State, 2 Iowa, 165 [63 Am. Dec. 487]; State v. Geebrick, 5 Ia. 491; State v. Weir, 33 Ia 134 [11 Am. Rep. 115]; State v. Copeland, 3 R. I. 33: Parker v. Commonwealth, 6 Pa. St. 507 [47 Am. Dec. 480]; State v. Wilcox, 48 Cal. 458 [Ex. Par. 6 Wall. 279]; 6 Am. & Eng. Enc. Law (1 ed.), 1023.

In State v. Parker, 26 Vt. 357, the act provided that it should be submitted to a vote of the people and on a favorable vote go into operation at a certain time. But in the event the vote was adverse, then the act should go into operation in December, 1853. The court held that the act went into effect absolutely without regard to the vote and therefore did not come within the general principles noted as its going into effect did not depend on the vote. While some of the reasoning of the court appears to be adverse to my claims it was not necessary to the decision of the case and is a mere *dictum*. 7 Vroom. N. J. 72; 30 N. H. 292; Gordon v. State, 46 Ohio St. 607 [23 N. E. Rep. 63; 6 L. R. A. 749]; Commonwealth v. McClare, 72 Pa. St. 491; Weiser v. Weiser, 5 Watt's 279, 283 [30 Am. Dec. 313]; State v. Morris, 12 Am. L. Reg. (N. S.) 32, refer to statutes in the nature of local option laws as the Ohio statute in which the acts passed were perfect and in effect, but the operation thereunder depended upon the vote of the people.

This was the case in Commonwealth v. Bennet, 108 Mass. 27, 30 [11 Am. Rep. 304], in which that class of acts as was argued and claimed and decided in Gordon v. State, 46 Ohio St. 607 [23 N. E. Rep. 63; 6 L. R.

A. 749], cited were the proper exercise of police powers. So in State v. Court, 36 N. J.; Lambert v. Lidwell, 62 Mo. 188.

A few courts, State v. O'Neill, 24 Wis. 149; Oliver, In re, 17 Ib. 681, and Smith v. Janesville, 26 Ib. 291, and 14 Ky. 218, cases nearly all involving the sale of liquor, the exercise of police power or vesting some municipal authority in the municipality or the body of the people, or the organization of corporations to take effect upon the acceptance of the corporations, a distinctly different question, appear to sustain the opposite doctrine, But in those states no constitutional prohibition as in Ohio cited, and the case of Peck v. Weddell, 17 Ohio St. 271, was one of the excepted cases mentioned in Art. 2, Sec. 30, Ohio constitution. See also 3 Am. & Eng. Enc. Law (1 ed.) 678; Cooley on Taxation, 61, 62.

The case of Bank v. Village, 18 N. Y. 38, and Starin v. Town, 23 N. Y. 439, and Gould v. Town, Ib. 456, have been cited as not sustaining what I have claimed. Those cases referred to operation under acts like Cincinnati, W. & Z. R. Co. v. Commissioners, 1 Ohio St. 77, the language of the first being (see page 40), " this act shall take effect immediately." So in the second case noted, the court says " the act took effect immediately on its passage." Page 446.

In Oregon, Brown v. Flemming, 4 Ore. 132, the direct question was passed upon which I have claimed here that only in the excepted cases such as the removal of county seats and others as in State v. Commissioners, 5 Ohio St. 497; Noble v. Commissioners, 5 Ohio St. 524, and Mad River & L. E. Ry. v. Barber, 5 Ohio St. 556 [67 Am. Dec. 312], and Peck v. Weddell, 17 Ohio St. 271, cited can such legislation be justified.

In Indiana the constitution provides substantially as in Ohio, Sec. 25, Art. 1. See Maize v. State, 4 Ind. 342, 343.

**Wm. F. Garver**, prosecuting attorney, for defendant, cited :

1. The facts stated do not constitute a cause of action. Holmes county salary law, 93 O. L. 660; Richardson v. State, 10 Circ. Dec., 458 (19 R. 191).

2. On the constitutionality of the salary law. Pearson v. Stephens, 56 O. S. 126 [46 N. E. Rep. 511]; State v. Commissioners, 5 Ohio St. 497, 503; Noble v. Commissioners, 5 Ohio St. 524, 527; Cincinnati, W. & Z. Ry. v. Commissioners, 1 Ohio St. 77; Grenada Co. Supervisors v. Brogden, 112 U. S. 261 [5 S. Ct. Rep. 125]; Cooley Const. Law, p. 160 ; 26 Wis. 292; Cass v. Dillon, 2 Ohio St. 607; Gordon v. State, 46 Ohio St. 607, 631, 635 [23 N. E. Rep. 63; 6 L. R. A. 749]; Stevens v. State, 61 Ohio St. 597 [56 N. E. Rep. 478]. See Gordon v. State, 46 Ohio St. 607, 615 [63 N. E. Rep. 63; 6 L. R. A. 749], brief; 14 Ky. 218.

MANDAMUS.

## DOUGLASS, C. J.

Two cases have been argued and submitted together; one is a proceeding in mandamus and the other, for an injunction. The ultimate purpose of these proceedings is to test the validity of an act of the general assembly of the state of Ohio, entitled, "An act to limit compensation of county officers in Holmes county," passed April 26, 1898, 93 O. L. 660.

The question presented by the proceeding in mandamus arises from an issue made as follows: The relator, Theodore Allison, as commissioner of Holmes county, avers, *inter alia*, that he prepared in due form his monthly account or bill for mileage and expenses paid by him for his services rendered said county as commissioner from September, 1899, to February 28, 1901. He claims a balance of $234.10 still due him. To his petition he attaches an itemized monthly statement of his mileage *per diem* and expenses paid out by him. "The foregoing," he says, "he presented to the prosecuting attorney and to the probate judge to be certified by the former and approved by the latter before presenting same to the board of county commissioners for allowance and payment as provided by law. He says that the prosecuting attorney refused to so certify and that the probate judge refused to approve the same, solely upon the ground that the said special salary law referred to limited his compensation to $600 *per annum*, and traveling expenses while on duty outside of the county. That this said special salary act wholly superseded the general laws of Ohio as to the compensation of relator and other officials of Holmes county, etc. To relator's petition a demurrer is interposed.

It appears that the purpose of this proceeding is to compel said prosecuting attorney to certify and said probate judge to approve relator's account, that the same may be presented to the board of commissioners for allowance and ultimate payment.

This issue necessarily draws in question the said so called salary law of Holmes county. Aside from this, however, the demurrer raises another question. Counsel for defendant claim that in no event is there anything due relator, as shown by his statement attached to the petition, even when his rights are measured by the general statute, Sec. 897, Rev. Stat., fixing the compensation of county commissioners generally.

If this court reached the proper construction of said statute in the case of Richardson v. State, 10 Circ. Dec. 458 (19 R. 191), it would appear from a careful analysis of relator's claim that it is at least doubt-

ful if there is anything due relator upon his own claim and showing, even if his rights were fixed by the general law, for the validity of which he here contends, and insists that it is not superseded by the subsequent act of April, 1898, because the later act is unconstitutional. If this fact were established to our entire satisfaction the writ would be refused and our labors end. But since the case referred to, decided by this court, has for many months been in the hands of the Supreme Court without any decision at this date having been handed down, we prefer to await such final decision before applying the rule therein prescribed, when, as in this case, it is not necessary to do so, for the reason, as heretofore stated, that two cases are here argued and submitted together, and an examination of both leads us to the conclusion that while the rights of the relator in this proceeding are somewhat problematical, that in the proceeding by injunction the validity of the said salary law is drawn in question also.

This brings us to the question presented, viz: Is the said act to limit the compensation of county officers in Holmes county unconstitutional?

The petitions invite and the demurrers raise the question propounded, involving the validity of this act as to the salary feature thereof. Many other questions are argued but are not before us on the issues made by the pleadings, and for that reason will not be considered.

The first and thirteenth sections of said act, 93 O. L. 660, raise the question and provide as follows:

## "AN ACT

### "To limit compensation of county officers in Holmes county.

"Section 1. *Be it enacted by the general assembly of the state of Ohio*, That in Holmes county the compensation of the county officers hereafter elected in said county shall be by annual salary exclusively, except as otherwise provided in this section, to be paid in monthly installments as follows: Probate judge, one thousand dollars; auditor, fifteen hundred dollars; treasurer, twelve hundred dollars; clerk of courts, one thousand dollars; sheriff, twelve hundred dollars; recorder, seven hundred dollars; prosecuting attorney, seven hundred dollars. which amounts shall include all clerk or deputy hire for said officials, The commissioners shall each receive six hundred dollars, which shall be in lieu of all per diem, mileage and expenses now received by the commissioners. And no county officer shall receive, nor agree to receive, directly or indirectly, any additional compensation from any source whatever, for the performance or omission of any official duty, except

10 O. C. C.—13-23.

that the probate judge shall be entitled to receive the fee now allowed by law for issuing a marriage license and filing and recording the certificate of marriage; and the auditor shall be entitled to receive the fees authorized by law for transfers of real estate; and the commissioners may receive their traveling expenses when on duty outside of the county. Nor shall either of said officers receive a reward of any kind from any employe in his office, or other person, in consideration of the appointment of any such employe, nor any portion of the compensation of any of his employes, nor any money or thing by way of gift or otherwise, from any officer, agent or employe of the county or its commissioners, or from any other person; and no such employe shall pay, or agree to pay, directly or indirectly, to the officer by whom he is employed any reward for his appointment, nor receive from any person any fee or compensation for his own use or for the use of such officer, for the performance or omission of any official duty.

" Section 13. That at the next general election to be held in the state of Ohio, after the passage of this act, the officers whose duty it is to provide for the printing of the ballots shall cause to be printed on all ballots below the list of names of candidates for office, with a blank space on the left margin in which to give each elector a clear opportunity to designate his choice, the following : For the county salary law. Against the county salary law. Notice that said proposition is to be submitted shall be given by the sheriff by proclamation, for the same length of time and in like manner as in his proclamation of general elections required by law. The clerks of each election precinct shall write on separate rulings on the left hand margin of the talley-sheets below the names of candidates : ' For county salary law.' ' Against county salary law.' And shall enter on the appropriate ruling the tallies of all votes cast for and against said proposition, and the aggregate number of votes for, and the aggregate number of votes against said proposition in each voting precinct, shall be forthwith certified by the precinct election officers to the proper board of deputy state supervisors of elections, or boards of elections, in like manner as the return of elections of county officers are certified, as required by law, who shall record the aggregate number of votes for and against said proposition. If upon such election a majority of the votes cast on said proposition shall be in favor of a salary law, this act shall take effect and be in force from and after the first day of January, 1899; but if a majority of the votes cast on said proposition be against a salary law, then this shall be void."

It is suggested that Sec. 1 of this act limiting its operation to

Holmes county alone, is therefore repugnant to and in conflict with Art. 2, Sec. 26, of the constitution of Ohio.

This contention is at once answered by the Supreme Court in Pearson v. Stephens, 56 Ohio St. 126 [46 N. E. Rep. 511], wherein the court say, in construing an act of similar character expressly limited to Miami county, " That the act of April, 1896, in so far as it prescribes and limits the compensation of certain county officers and their assistants therein named, *the operation of which is expressly limited to Miami county* relates a subject *local* in its nature and therefore does not conflict with Sec. 26, Art. 2, of the constitution of this state." Upon this contention we rest our decision upon the above case.

The Holmes county salary law is modeled much after the provisions of the Miami county act. Said acts are alike in their main provisions. The principal difference, however, is that the Holmes county act provides for a submission of the proposition, whether for or against a salary law, to a popular vote of the electors of the county before it shall go into effect, which provision is not found in the Miami county act.

Here arises the real contention in this case. It is strongly contended :

First. That the said act provides for its submission to a vote of the electors in virtue of its own provisions before the act by its own terms is to take effect.

Second. That by virtue of Sec. 13 said act is to take effect on a majority vote of the electors approving a salary law instead of an approval by the general assembly according to the requirements of Art. 2, Sec. 26, of the constitution of the state, and therefore in conflict with the same.

The first proposition finds a complete answer, as we think, in two cases, State v. Perry Co. (Comrs.), 5 Ohio St. 497, and Noble v. Noble Co. (Comrs.), 5 Ohio St. 524. The court held that, for the purposes of the vote, the acts took effect on their passage, though their operative effect was made dependent upon a vote of approval by a majority of the electors voting therefor. It is proper to remark that said vote of approval in these cases was in pursuance of a constitutional requirement which provides for such submission in certain excepted cases, and do not aid or control in the determination of the second and real contention above referred to.

Coming now to the last and real contention for determination, viz.: That by virtue of Sec. 13 of said act it is to take effect on a majority vote of the electors approving a salary law instead of an approval by

Holmes County.

the general assembly according to the requirements of Art. 2, Sec. 26 of the constitution of the state, and is therefore in conflict with the same.

We will assume that when the validity of a law is assailed that the presumption is always in favor of its validity. That there must appear either an unwarranted assumption or usurpation of power, or a clear incompatibility between the constitution and the law sought to be enforced, before the judicial power will declare it a nullity. However, it is not only the right, but a duty imposed upon judicial tribunals, when a legislative act properly drawn in question in a suit pending before it, to determine whether the law is opposed to the constitution of the state, or the fundamental law of the land, and if so found, to treat it as a nullity and declare it void.

As before stated, Sec. 13 of this act calls for a submission to the electors of Holmes county on the question, whether for or against a salary law. Said election provides the machinery for registering and declaring said vote, and concludes as follows:

"If upon such election a majority of the votes cast on said proposition shall be in favor of a salary law, this act shall take effect and be in force from and after the first day of January, 1899; but if a majority of said votes cast on said proposition be against a salary law, then this act shall be void."

The claim is that this act in question does not belong to any of the classes provided for in the exceptions to Art. 2, Sec. 2 of the constitution, such as schools, nor as to the excepted cases named in Sec. 30 of the constitution, such as creating new counties, changing the lines thereof, and removing county seats and the like, wherein there is especially reserved to the electors thereof the right of a submission to a vote of the people before such acts shall be operative.

The further claim is that this salary act does not belong to any of such excepted cases, and the attempted submission to a vote of the people as provided by Sec. 13 thereof, is an unwarranted submission to them of a power not reserved to them by the constitution and is therefore void under the general delegation of legislative powers to the general assembly of the state.

It is important first to notice the character of this act. Under the authority of Pearson v. Stephens, *supra*, the operation of this act being expressly limited to Holmes county makes it a local law and not a rule of action prescribed for the state.

The electors are invited to register their will in this county as to a "Salary Law," not in terms of this act, but to reach a consensus of opinion on the advisability of a salary law. They are not called upon to fix the

Allison v. Garver.

terms upon which the act may be performed or the obligations thereupon attaching. These are all absolutely prescribed by the legislature, and whenever called into operation, if at all, govern and control in every detail. It is not mandatory but permissive. It is of local concern only.

Counsel for plaintiff implicitly rely upon the case of Barto v. Himrod, 8 N. Y. 483, 490 [59 Am. Dec. 506 ; 4 Seldon, 483], as supporting his contention. And it must be conceded that the logic of this case would sustain the claim of plaintiff.

The act under consideration in that case was one to establish free schools throughout the state. The provision held to be obnoxious to the constitution of the state was as follows :

" The electors shall determine by ballot at the annual election to be held in November next *whether this act shall or shall not become a law.*"

The distinction to be taken between the case at bar and the case of Barto v. Himrod, *supra*, here reviewed, is, that in the latter case it is a general law ; in the case at bar it is a local law. In the New York case the electors are to determine whether *the act* shall or shall not become a law; in the case at bar the electors are called upon to determine whether they are in favor of *a salary law,*—not necessarily the act in question.

If by the vote they so declare themselves to be in favor of *a salary law,* then the law passed by the general assembly will take effect on a day named, etc. Further reference to these distinctions will appear in this opinion.

In this case here reviewed it is not denied that a valid statute may be passed to take effect upon the happening of some future event, certain or uncertain. The argument is that a statute as it is promulgated by the legislature must be a law *in presenti* to take effect *in futuro,* and that the popular vote upon the expediency of the law is not such a future event within the meaning and intent of the constitution. That on the question of expediency the legislature must exercise its own judgment definitely and finally. That it has no power to make a statute dependent on such a contingency, because it would be confiding to others that legislative discretion which they are bound to exercise themselves, and which cannot be delegated. The conclusion of a well reasoned opinion is, that the law under consideration was a mere proposition submitted to the people to be adopted or rejected as they pleased ; that the legislature merely propose the law and that the people pass or reject it by a vote ; that this is legislation by the people.

In Bank of Rome v. Rome (Vil.), 18 N. Y. 38, 44, and Starin v. Genoa, 23 N. Y. 439, and Gould v. Sterling, 23 N. Y. 456, the case of

Barto v. Himrod, 8 N. Y. 483 [59 Am. Dec. 506], is examined and the broad doctrine of that case is modified, if not repudiated. At least a clear distinction is made between a general law, as in Barto v. Himrod, *supra*, and a *local* law, such as this salary act.

A reference to Bank of Rome v. Rome (Vil.), *supra*, will show the distinction here taken. The third and fourth divisions of the syllabus is as follows :

" An act which by its terms is to take effect immediately, but which confers upon the authorities of a municipality certain powers not to be exercised until such has been approved by a vote of the inhabitantss, is constitutional. This is not a delegation of legislative power within the case of Barto v. Himrod, 4 Seldon, 483. The submission by the legislature to a local constituency of a question affecting their local interests, is to be distinguished from the submission of a question affecting the whole state to the entire body of electors."

Referring to page 44 of said case, Johnson, C. J., says :

" Another question, which was assumed in the commencement of this opinion, remains to be considered. In Barto v. Himrod, 8 N. Y 483, the free school law was held to be unconstitutional. That was an act relating to the whole state, and the question was submitted to the people of the whole state, to be determined by their votes, whether or not the act should become a law. The act now in question differs in substance from the school law in the particulars on which that case turned. The matter involved was one of local interest only. * * * The case is, therefore, in substance, only a submission to a vote of the parties interested, of the question whether or not they chose that the municipal corporation should subscribe to the railroad. In other words, the legislature did not compel the village to subscribe, but, creating by law the necessary machinery, left it to the taxpayers to determine that matter."

A reference to Starin v. Genoa, *supra*, shows that this same case was there considered, and while not repudiated was distinguished from the case then under consideration, and it is there said that the parties to be affected by the act were at liberty to accept the privileges granted and incur the credit or obligations it would impose, as their interests or will should dictate. And that any one or more of the towns might make it effective as to themselves. And it will be observed in all these cases, one of the principal grounds taken against their valididity was that it delegated the legislative power of the state to the voters of the village of Rome, within the principle settled in Barto v. Himrod, *supra*. And in all these cases, these acts were sustained as not in violation of

Allison v. Garver.

the constitution, although the provisions of the acts required the same to be approved by the electors before the power conferred could be exercised.

These references, and especially that of Bank of Rome v. Rome (Vil.), *supra*, clearly show that the courts distinguish between a general and local law, and while this distinction does not commend itself to us as founded upon any good reason, yet it cannot have any other effect than to very materially weaken the authority of Barto v. Himrod, *supra*,

Referring to Attorney General v. O'Neil, 24 Wis. 149, the second division of the syllabus is as follows:

"An act establishing a board of public works in the city of Milwaukee, provides that it shall be void unless accepted by a majority of the legal voters of that city in a manner therein prescribed. Held to be a valid law."

And Cole, J., in the opinion, says:

"And it is very manifest that the precise question submitted to the electors was whether they were in favor of a board of public works or against a board of public works. If a majority of the electors were or should be in favor of the board created by the law, then the law was to be in full operation, otherwise not. And the question is, can such a law be said to be an unauthorized delegation of the legislative power to the people, because it appears upon the face of the act that the legislature merely propose a project or plan for a law, and submit the question to the electors to determine whether it should become a law or not. It appears to us not.

"The question here presented is not a new one. It has frequently been presented to the courts, and while it may be admitted that in some of the cases many very nice distinctions are taken and much subtle reasoning employed to show that certain laws were invalid because made to depend upon a vote of the people, yet this proposition seems generally to be conceded, that a valid statute may be passed to take effect upon the happening of some future event, certain or uncertain."

Ruggles, C. J., makes this concession in Barto v. Himrod, *supra*, and there is no doubt but that the principle is approved by many high authorities. And while conceding this proposition the chief justice in that case thought it was not competent for the legislature to provide that a general statute should take effect upon that happening of a future contingent event, such as a vote of the people in its favor. The courts of New York, however, have not shown any disposition to extend the doctrine of Barto v. Himrod, *supra*, to local and special statutes which relate to local government and matters of municipal concern. Bank of Rome

v. Rome (Vil.), 18 N. Y. 38; People v. Comrs. of Taxes 23 N. Y. 224, 239, and Gould v. Town of Sterling, 23 N. Y. 456.

In State v. Parker, 26 Vt. 356, 365, Redfield, C. J., says, that the distinction attempted between the contingency of a popular vote and other future contingency, is without all foundation in sound policy or sound reasoning; that it has the appearance of having been made more from necessity than choice.

"This criticism upon the soundness of the doctrine of Barto v. Himrod, and cases of that class, strike my mind," says the judge, "as having great force, though it is not necessary to fully adopt it as correct in this case, since the law before us is one of local concern, relating solely to municipal government of the city of Milwaukee, and may provide that an act, perfect in itself, may go into operation and effect on the contingency of a vote of the people in its favor."

It seems to us that all the legislature has done, in the section above quoted, was to prescribe the condition upon which the law was to be in full force and effect, and that when the condition was performed, or the contingency happen, the provisions of the law derived their authority, not from the vote, but from the will of the law-making power.

Again, referring to Smith v. Janesville, 26 Wis. 292, the third division of the syllabus is as follows:

"An act of the legislature affecting the people of the whole state is not invalid because by its terms it was to take effect only after it should be approved by a majority of the popular vote at a certain election."

In the opinion by Dixon, C. J., at page 294, we have the following:

"But it is said that the act is void, or at least so much of it as pertains to the taxation of certain shares in the national bank, because it was submitted to a vote of the people, or provided that it should take effect only after approval by a majority of the electors voting on the subject at the next general election. This was no more than providing that the act should take effect on the happening of a certain future contingency, that contingency being a popular vote in its favor. No one doubts the power of the general assembly to make such regulations and conditions as it pleases with regard to the taking effect or operation of laws that may be absolute or conditional and contingent, and if the latter, they may take effect upon the happening of any event which is future and uncertain.

"The only question here would seem to be whether a vote of the people in favor of a law is to be excluded from the number of those future contingent events, upon which it may be provided that it shall take effect. A similar question was before the court in the late case, 24 Wis., 149. We came unanimously to the conclusion in that case,

Allison v. Garver.

that the provisions for a vote of the electors of the city of Milwaukee in favor of an act of the legislature before it should take effect, was a lawful contingency and that the act was valid.    There the law was submitted to the voters of Milwaukee, and here it was submitted to those of the state at large."

Then the court asks, " What is the difference between the two cases?    It is manifest on principle that there cannot be any.    The whole reasoning of that case goes to show that this act must be valid, and so it has been held in the best considered cases as will be seen by reference to that opinion."    And the court concludes, sustaining the law in all particulars.

The case of In re Richard Oliver, 17 Wis. 703, is a well considered case and a large number of authorities are reviewed, including Cincinnati, W. & Z. R. R. Co. v. Clinton Co. (Comrs.), 1 Ohio St. 77, and the doctrine of the former cases heretofore referred to is sustained.

The case of Burr v. Blanding, 14 Cal. 357, is quoted by Paine, J., with approval, and is as follows :

" Laws may be absolute, dependent upon no contingency, or they may be subject to such conditions as the legislature may impose.    They may take effect only upon the happening of events which are future and uncertain, and among others, the voluntary acts of the parties upon whom they are designed to operate.    They are none the less perfect and complete when passed by the legislature, though future and contingent events may determine whether or not they shall ever take effect.    In anticipation of invasion or insurrection or local disturbance, or other emergency requiring the exercise of special powers, acts are constantly passed, and yet no one has ever questioned their validity as laws because dependent in their operation upon occasions which may never arise."

The well known case of the Cincinnati, W. & Z. R .R. Co. v. Clinton Co. (Comrs.) *supra*, seems to furnish logic and consolation to both parties of a kind decisive to both their contentions.    In this case the county commissioners were authorized by the general assembly to subscribe to the capital stock of the company, the question of the subscription having been first submitted to the qualified electors of the county.    The question here decided is only analogous to the one now under consideration.    It is only by the broad and able discussion of underlying principles by Ranney, J., in delivering the opinion, that we are essentially aided in our judgment in this case.    He says, *inter alia*: " Undeniably, the complete exercise of legislative power by the general assembly does not necessarily require the act to so apply its provisions to the subject matter as to compel their employment without the intervening assent

of other persons, or to prevent their taking effect only upon the performance of conditions expressed in the law."

Further on he says : " The true distinction, therefore, is between the delegation of power to make the law, which necessarily involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made."

Again : " So far as the statute confers authority and discretion, it is as obligatory from the first as the legislative power can make it ; and although its further practical efficiency may depend upon the discretionary act of some other body or indivdual, it is not derived from that discretion, but from the will of the legislature which authorized the act, and prescribed its consequences."

Our conclusion from this case is, that the act then under consideration, commanding a vote to be taken, was a submission to the discretion of the voters of Clinton county, who alone had to bear the burden if assumed by them.

That this power of deciding upon the manner of its execution was a condition prescribed by the general assembly itself, upon which alone it is permitted to have effect.

The case of Gordon v. State, 46 Ohio St. 607 [23 N. E. Rep. 63 ; 6 L. R. A. 749], is one more nearly in point. The question under consideration in this case involved the constitutionality of an act to further provide against the evils resulting from the traffic in intoxicating liquors by local option in any township in Ohio. It is a law to take effect upon a contingency, to-wit, a vote of the people for or against it. This vote postpones its operation and effect to a later day. This act, in a well considered opinion by Dickman, J., is held not to be in conflict with the constitution, and therefore a valid law.

The question made in this case is whether, when an act of the general assembly makes its execution contingent upon the vote of the electors to be affected by it, is such a provision a delegation of su h legislative power to the people as to render the act for that reason unconstitutional ?

The court, in the opinion, on page 633, say : " The local option act under consideration is virtually a law to prohibit the sale of intoxicating liquors upon the contingency that a majority of the qualified electors of any township shall vote against the sale. Practically, it is to go into operation upon such contingency." Then, quoting from the opinion of Judge Scott in Peck v. Weddell, 17 Ohio St. 271, say : " Many laws can only operate upon the happening of certain contingencies ; yet they

are, nevertheless, valid." Then the court proceeds: "Indeed, the doctrine is generally accepted that it is within the scope of the legisla-tive power to enact laws which shall not take effect until the happening of some particular event or some contingency thereafter to arise, or upon the performance of some specified conditions. May not the exe-cution of a law depend upon the condition of a popular vote as well as upon any other fair and reasonable contingency?

Then, quoting from the opinion of Redfield, C. J., in State v. Parker, *supra*, say: "After a full examination," says he, "of the argu-ments by which it is attempted to be maintained, that the statutes made dependent upon such contingencies are not valid laws, and after a good deal of study and reflection, I must declare that I am fully convinced— although at first, without much examination, somewhat inclined to the same opinion—is' the result of false analogies, and so founded upon a latent fallacy. It seemed to me that the distinction attempted between the-contingency of a popular vote and other future uncertainties, is without all just foundation in sound policy or sound reasoning."

The court, quoting with approval Commonwealth v. Weller, 14 Bush (Ky.) 218, [29 Am. Rep. 407] in which there was under consider-ation an act to prohibit the sale of intoxicating liquors in the county of Bullitt, provides that it shall take effect whenever it shall be ratified by a majority of the voters of the county. The view taken by the court in construing the act was that the legislature was not attempting to delegate its authority to a new agency; that when the act passed the legislature and was signed by the executive, it became a law, and by reason of the law the people interested in its passage were authorized to vote for or against its provisions; that the making of its operation dependent upon the popular vote was a part of the law itself, and its going into operation on the contingency that the people voted for it, was the legislature's will on the subject.

The case, Smith v. Janesville, *supra*, is quoted with approval, and many other cases sustaining the doctrine of those above cited.

In the light of these authorities, how stands this case?

Under our constitution it may be regarded as absolutely settled, that when a sovereign people have by their fundamental law conferred upon the legislature the law making power, that organic body cannot delegate such power to any other agency. Laws must be enacted only through this established agency of the people. But grave doubts always arise when we undertake to ascertain the boundaries between that legislative power which cannot be delegated and those discretionary powers which the legislature may entrust to other departments or per-sons in the execution of the laws.

The act under consideration applies to Holmes county alone. Upon the authority of Pearson v. Stephens, *supra*, it is, in that regard, a valid local law.

It is universally conceded that a valid statute may be passed to take effect upon the happening of some future event, either certain or uncertain. It may be absolute, depending upon no contingency, or it may be conditional or contingent. The controlling question presented would seem to be, whether a vote of the people in favor of a law, is to be excluded from the number of those future contingent events, upon which the legislature may provide that it shall take effect.

In Barto v. Himrod, *supra*, this doctrine is denied. It is asserted that a popular vote is not such a future event within the meaning and intent of the constitution. But in later cases in the same state, Bank of Rome v. Rome, and Starin v. Genoa, *supra*, this doctrine, as we have shown, is wholly repudiated in so far as applied to local laws such as the act now under consideration. Gordon v. State ; Peck v. Weddell, *supra*, and many other cases, some of which are cited in this opinion.

But it may be said that this presupposes a valid law, perfect in all its parts, and that the condition of a popular vote applies only to its proper execution. But may not the contingency of a popular approval be one of its parts, conditions or contingencies? And, as said by Agnew, J., (which is quoted with approval in Gordon . v. State, *supra*): "This popular vote is but the law's appointed means of determining a result, which the law enacts, in an alternative form, shall be the contingency of its operation."

The true distinction, we conceive to be this : While the legislature cannot delegate its power to make a law, yet it can make a law which delegates a power to determine facts or ascertain a given status upon which the law makes its own action or efficiency depend. Making its operation depend upon a popular vote was a part of the law itself, and thus putting it into operation was the legislative will on the subject : hence the provisions of the law derive their authority, not from the vote but from the will of the law-making power. As said by Ranney, J., in delivering the opinion in the case referred to, Cincinnati, W. & Z. R. R. Co. v. Clinton Co., *supra*: "So far as the statute confers authority and discretion, it as as obligatory from the first as the legislative power can make it ; and although its further practical efficiency may depend upon the discretionary act of some other body or individual, it is not derived from that discretion but from the will of the legislature which authorized the act and prescribed its consequences."

In the act under consideration the discretion vouchsafed to those to be effected is not in fixing the terms and conditions upon which

Allison v. Garver.

the law may go into operation and be performed, or in fixing the duties assumed thereby or the obligations that are imposed. These are all definitely prescribed by the general assembly and conclusively govern. It is a complete and perfect law. It commands a submission to a popular vote of the electors of Holmes county, and as said by Ranney, J., in the case cited : " It is not the vote that makes, alters even or approves the law, but * * * it is the law that makes the vote and prescribes everything to be done consequent upon it."

After a careful consideration of this case, and of the authorities and argument of counsel, we are unable to reach the conclusion that the act under review is repugnant to the constitution and therefore void, upon any ground presented by the issues made. We do not, at least, have a clear and strong conviction that the law in question and the constitution are clearly incompatible, which should exist in the mind of a court, before an act of the legislature is declared void, or that the general assembly has transcended its powers. The judgment of the court of common pleas is therefore affirmed.